T. F. BARNES v. J. H. McMURTRY, RECEIVER, ETC.

[FILED MARCH 19, 1890.]

1. Fire Insurance: PLEADING. Where the facts upon which the statute of limitations as predicated do not appear in the petition, but such plea is interposed in the answer as a defense, the time when the statute began to run must be definitely stated and the mere allegation that the action is barred is not sufficient.

2. ———: LIMITATION CLAUSE: MUST BE SUPPORTED BY CONSIDERATION. To sustain a proviso in a contract that an action thereon must be brought within a time much less than the statute of limitations—as six months—there must be a consideration, unless it was within the contemplation of the parties when the contract was entered into, and this rule applies to a policy of insurance.

ERROR to the district court for Lancaster county. Tried below before FIELD, J.

*George E. Hibner,* for plaintiff in error :

The limitation clause in the policy is unreasonable and since a similar provision in a city charter has been held void (*Foxworthy v. Hastings,* 23 Neb., 772), this clause should not be enforced. (*Mason v. Ins. Co.,* 39 N. Y., 46 ; *Westchester F. Ins. Co. v. Dodge,* 9 Ins. L. J. [Mich.], 909 ; *Wilson v. State F. Ins. Co.,* 7 L. C. Jur., 283 ; May, Ins., sec. 478, n. 1).

*Robert Ryan, contra :*

The limitation clause has been upheld by the courts of a majority of the states, and is binding on the parties. (*Cornell v. Phœnix Ins. Co.,* 67 Ia., 388 ; *Edson v. Merchants Mut. Ins. Co.,* 35 La. An., 353 ; *Blanks v. Hibernia Ins. Co.,* 36 La. An., 599 ; *McIntyre v. Mich. State Ins. Co.,* 52 Mich., 188 ; *Allemania Ins. Co. v. Little,* 20 Brad. [Ill.], 431 ; *Phœnix Ins. Co. v. Lebcher,* Id., 450 ; *Garretson v. Hawkeye Ins. Co.,* 65 Ia., 468 ; *Humboldt Ins. Co. v. Johnson,* 1 Brad. [Ill.], 309 [Affirmed, 91 Ill., 92]; *Underwriters' Agency v. Sutherlin,* 55 Ga., 266 ; *Arthur v. Homestead Fire Ins. Co.,* 78 N. Y., 462 ; *DeGrove v. Metropolitan Ins. Co.,* 61 Id., 594 ; *Wilkson v. First Nat. Fire Ins. Co.,* 72 Id., 499 ; *Glass v. Walker,* 66 Mo., 32 ; *Tasker v. Kenton Ins. Co.,* 58 N. H., 469 ; *Corn City Mut. Ins. Co. v. Schwan,* 1 Ohio C. C., 192 ; *Farmers Mut. Ins. Co. v. Barr,* 94 Pa. St., 345 ; *Waynesboro Mut. Fire Ins. Co. v. Conover,* 98 Id., 384 ; *Universal Mut. Ins. Co. v. Weiss,* 106 Id., 20 ; *Phœnix Ins. Co. v. Underwood,* 12 Heisk. [Tenn.], 424 ; *Higgins v. Windsor Co. Mut. Ins. Co.,* 54 Vt., 270 ; *O'Laughlin v. Union Cent. Life Ins. Co.,* 3 McCrary [U. S.], 543 (following *Riddlesberger v. Ins. Co.,* 7 Wallace [U. S.], 386]; *Davidson v. Phœnix Ins. Co.,* 4 Sawyer

[U. S.], 594; *Thompson v. Phœnix Ins. Co.*, 25 Fed. Rep., 296; *Dickie v. Western Assur. Co.*, 21 New B., 544; 2 Wood, F. Ins., sec. 260, and cases there cited.)

MAXWELL, J.

This is an action upon a policy of insurance.

It is alleged in the petition that "The Lincoln Insurance Company, of Lincoln, Nebraska, is a corporation duly organized and existing under and by virtue of the laws of the state of Nebraska; that said corporation is insolvent, and that said J. H. McMurtry was duly appointed by the district court in and for the county of Lancaster and state of Nebraska as receiver for said corporation; that on the 28th day of February, 1887, Thomas L. Edwards and David J. Adams, under the firm name of Edwards & Adams, were the owners of the following described property, viz: 1 frame building and additions, including boiler house adjoining, situate on premises of assured at Carleton, Monroe county, Michigan, occupied for the manufacture of staves, and headings and scale boards, also all fixed and movable machinery, shafting, gearing, belting, tools, and apparatus, engines, force pumps, and connections, and boiler, iron smoke stack, and fixtures contained therein, also all steam boxes and steam piping and fixtures contained therein, situate about ten feet north of the above described building, and that said insurance company on said day, in consideration of the sum of $40 paid by said Edwards & Adams to said Lincoln Insurance Company as a premium, executed and delivered to said Edwards & Adams their policy of insurance, a copy of which is hereto attached, marked 'Ex. A.'

"Plaintiff further alleges that on the 9th day of August, 1887, said building and contents, as described in said policy, were totally destroyed by fire, and that said fire did not originate by any act, design, or procurement on the part of said Edwards & Adams; that on the 10th day of

September, 1887, said Edwards & Adams gave said Lincoln Insurance Company due notice and proof of said fire and loss, and has duly performed all the conditions of said policy of insurance; that said Edwards & Adams' loss by reason of said fire was as follows: .

On 1st item in said policy ............................$133 33
On 2d item of said policy............................ 466 67
On 3d item of said policy............................ 166 66
On the 4th item of said policy......................  91 67
On the 5th item of said policy......................  66 67

Total loss by reason of said fire...................$875 00

"That on the 5th day of May, 1888, said policy of insurance, together with all claims for damages on the same, and all the rights and interests thereunder belonging to said Edwards & Adams, was, for value received, duly sold, assigned, and set over to this plaintiff; that no part of said sum of $875 has been paid to said Edwards & Adams nor to this plaintiff, and said defendant has refused to allow or pay the same, and there is now due to this plaintiff the sum of $875 and interest thereon from the 10th day of November, 1887."

The fifth and ninth clauses of the alleged conditions printed in fine print in the policy are as follows: "In case of loss or damage by fire, the assured shall .forthwith give written notice thereof to the company, and shall use all practical means to save and protect property not destroyed, and within sixty days render an account of the loss, signed and sworn to, stating how the fire originated, giving copies of the written portions of all policies thereon, also the actual cash value and ownership of the property and the occupation of the premises, and, whenever required, shall submit to examinations under oath by any person designated by the company apart from all other persons except the attesting magistrate or notary, and subscribe thereto when reduced to writing, and produce all

books of account, bills, and other vouchers (or copies there-
of, if originals are lost) at the office of the company, and
permit copies and extracts thereof to be made, and shall
furnish plans and specifications of any building, fixtures,
or machinery destroyed, and shall, if required, produce
the certificate of a magistrate or notary public nearest the
place of the fire, stating that he has investigated the cir-
cumstances of the fire and believes that the owner has,
without fraud, sustained loss to amount claimed. When
personal property is damaged, the assured shall forthwith
cause it to be put in order, separating the damaged from
the undamaged, and shall furnish an inventory, naming
the quantity, quality, and actual cost of each article. In
case of disagreement as to the amount of sound value of
or damage to any property insured, the same shall, at the
written request of either party, be determined by impartial
arbitrators, one to be chosen by the company and one by
the assured, the two so chosen to select a third in case they
cannot agree, and the report or award of two of them, to be
made in writing and under oath, shall be conclusive as to
the amount of such sound value and damage. The com-
pany reserves the right to take any appraised property at
its appraised value, but there can be no abandonment to
the company of property insured. Proofs of loss must, in
all cases, be made by the owner of the property at the time
of the fire. Loss or damage to property by the removal
thereof to protect it from fire shall be borne by the com-
pany and the assured in the proportion that the amount
of the policy bears to the value of the property.

"LIMITATION CLAUSE.—It is hereby covenanted and
agreed that no suit or action on this policy for the recovery
of any claim shall be sustainable in any court of law or
equity until after an award shall have been obtained by
arbitration in the manner herein provided, nor unless com-
menced within six months next ensuing after the fire, ex-
clusive of any time consumed in arbitration."

To this petition the defendant filed an answer as follows :

" And now comes the defendant in above cause, and for answer to the petition herein filed this defendant says he admits that the averments of the first, second, and third paragraphs of said petition are true, and admits that on September 10, 1887, said Lincoln Insurance Company received from Edwards & Adams due notice and proof of the alleged loss ; that the amount of such loss was as stated in plaintiff's petition aforesaid, and that the right of action therefor has been duly assigned and set over by Edwards & Adams, and that no part of the loss of $875 has been paid ; defendant denies each allegation in plaintiff's petition not herein admitted.

" For further answer this defendant says that, as an essential part of the contract of insurance, it was stipulated therein, in writing, and covenanted as follows: 'IX. It is hereby covenanted and agreed that no suit or action on this policy for the recovery of any claim shall be sustained in any court of law or equity until after an award shall have been obtained by arbitration in the manner herein provided, nor unless commenced within six months next ensuing after the fire, exclusive of any time consumed in arbitration.' This defendant says that, exclusive of any and all time consumed in arbitration, more than six months had elapsed from the date of the fire; on account of which plaintiff, in his petition, asks a judgment before a suit or action was brought for loss by reason of said fire, and that, by the terms of the very written contract upon which plaintiff seeks a recovery, plaintiff's right of action has become fully barred by reason of the failure to bring suit within six months from the time the loss occurred, exclusive of time spent in arbitration."

A demurrer was filed to the answer and overruled and the action dismissed, to which the plaintiff excepted and now brings the case into this court on error.

It will be observed that the policy provides that, " in

case of disagreement as to the amount of sound value or of damage to the property, the same shall, at the written request of either party, be determined by impartial arbitraors, * * * to be made under oath, shall be conclusive as to the amount of such sound value and damage." There is no allegation in the answer that proof of loss was accepted by the defendant as the true measure of damages, and that therefore there had been no arbitration. The inference from the answer is, that there had been an arbitration by which the rights of the parties had been adjusted, but when this took place does not appear.

The six months in which the action could be brought would not commence to run until an action could be brought, and certainly not until the lapse of sixty days after the service of the proof of loss. At the most the answer states a mere conclusion and not facts, and fails to show that the action is barred; in other words, where the facts upon which the statute of limitation is predicated do not appear in the petition, but such plea is interposed in the answer as a defense, the time when the statute began to run must be definitely stated, and the mere allegation that the action is barred is not sufficient.

Second—But the answer fails to state a defense for another reason. The provision limiting the time in which to bring an action on the policy is in these words: " Nor unless commenced within six months next ensuing after the fire, exclusive of any time consumed in arbitration." These words are in small type and placed at the bottom of the ninth proviso. The most that can be claimed for these words is that they constitute a contract between the parties for a special limitation differing from and much less than the statute. But to support a contract there must be a consideration. If there was no consideration in support of the provision it would be like any other contract having no consideration to support it, a *nudum pactum*. If such a provision was in the contemplation of the parties when

the application for insurance was made, or was in the application itself, then no doubt the original consideration paid for the insurance, and the policy issued thereon, would bind the insured, but a mere voluntary restriction, not in the application nor in the contemplation of the parties, placed in the policy as a proviso, in print too fine to be read by a person of middle age without spectacles, cannot be considered a part of the contract. Suppose A should apply to B for a loan of money and B, believing A to be an honest man, should send him the money with a request that he forward his note for the same, and suppose A should send a note for the amount borrowed in proper form but should write on the margin thereof that B must bring an action on the note in six months after it became due or be barred; would such a proviso bar the action in less than the period fixed by statute? That it would not will be conceded. The contract in such case was for the loan of a certain amount of money for a specified period at lawful interest, and any provision restricting the right of recovery would be without consideration and void. So in case of insurance. A party who desires insurance on his property applies to an agent of. some company in which he has confidence, and is furnished with a blank application to fill out and does prepare the same and deliver it to the agent and pays the premium demanded. The premium he has just paid is for the insurance, and he may reasonably suppose that having paid the ordinary rates the company in case of loss will pay the same promptly after proof thereof is duly made. If it fails to do so he may reasonably expect that the time to bring an action against the company is the same as upon any other written contract where there has been a breach thereof. A policy is issued and he, believing the company to be honorable, and to have based its policy on the application, the policy is not read but placed among his valuable papers, and only after a loss occurs is it examined. Every

person familiar with the subject well knows that such is the ordinary course in very many cases at least. If it is sought to interpose conditions or restrictions of this kind, they should be set forth in the application, or be brought to the attention of the insured when the premium is paid; otherwise, unless there is a consideration shown for them, they will not be sustained. If it is said that the business of insurance is peculiar, and that it is necessary to try the cases as soon as possible after a loss occurs so the proof may be available, the answer is that the insurer well knows that it may be called upon to make good the loss at any time after one occurs and has the right and authority of any other litigant to take and perpetuate testimony, and there seems to be no good reason for an exception in favor of one company more than another. In the many complex actions brought against railway, telegraph, and other companies, where the defense largely depends upon the testimony of witnesses, it has never been seriously urged that such companies were entitled to a shorter limitation than other persons because of the liability of their witnesses to go away, or for other causes. It is the policy of the law to have but one law of limitations alike for the poor and the rich, for the wealthy corporation and the insolvent, and to establish a limitation by contract there must be a sufficient consideration; otherwise it will not be available.

In the very able exposition by Lord Mansfield in *Carter v. Boehm*, 3 Burr., 1905, of statements made by the insured to obtain a policy and their effect, the general rules governing the rights of the insured and insurer are considered at length; and an examination of the early causes will show that a special limitation within which the action should be brought in case of loss, was a part of the original contract. Such a contract was absolutely essential at that time, as the statute of limitations was held to be one of presumption that the debt was paid, and not, as at present, one of repose.

Steven v. Ins. Co.

Thus, in *Whitcomb v. Whiting*, 2 Doug. [Eng.], 652, decided by the same eminent judge, several years later than the decision in *Carter v. Boehm*, it was held that an admission by one joint debtor was the admission of all, and that "the law raises a promise to pay when the debt is admitted to be due."

When it is considered that a verbal admission or promise was sufficient to revive or continue the debt in force, the necessity for limiting the right of action by contract is apparent.    None of these reasons exist in this state.    Here the statute is one of repose, and a debt cannot be revived or continued in force except by an admission thereof or promise in writing to pay the same.    Mere lapse of time, therefore, in no case to exceed five years, will bar an action on a policy.

As this is the first time the questions under consideration have been presented to this court, we have made a careful examination of the reported cases and have adopted such rule as to our minds seems best to comport with justice and fair dealing, and therefore hold that the answer wholly fails to state a defense.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.