# Smith v. Herd, &c.

APPEAL FROM FAYETTE CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS. AFFIRMED.

FIRE INSURANCE—ARBITRATION AND AWARD—WAIVER OF PROOFS OF LOSS—ACTION—LIMITATION —CONTRACT —VALIDITY — SUSPENSION OF LIMITATION BY ACTION AFTERWARDS DISMISSED—CONTINUITY OF ACTION AGAINST GARNISHEE.

Held: 1. Where there was immediate notice of loss, followed by an arbitration and award as to the amount of the loss, there was, under the circumstances attending the award, a waiver by the company of the "satisfactory proof of loss" required by the policy.

2. As the award, both by the terms of the submission and by the terms of the policy, was limited in its effect to the determination of the amount of the loss, it did not fix the liability of the company, but merely determined the amount of the liability in the event the company should be found to be liable.

3. A provision in a policy of insurance limiting the time within which an action may be brought to a period less than that fixed by the statute of limitations is valid.

4. Where an action brought within the contract period of limitation was dismissed, but not for want of jurisdiction, a new action, brought after the expiration of the period of limitation, though immediately after such dismissal, was barred.

5. Where an action at law was dismissed after a garnishee had answered that he owed nothing, and an action was immediately brought against the same debtor on a judgment and return of *nulla bona*, to which the garnishee was made a defendant, the new action can not be regarded as a continuation of the former one so as to avoid a plea of limitation by the garnishee as to the cause of action asserted against him, in the absence of anything to show that the cause of action against the principal debtor sued on in the new action was the same as that sued on in the former action, or that there was any intention to rely upon Civil Code Practice, section 227, providing that, "if a garnishee fail to make a disclosure satisfactory to the plaintiff, the latter may bring an action against him by petition or amended petition."

JUDGES GUFFY, WHITE, AND O'REAR, DISSENTING IN PART.

                          Smith v. Herd, &c.

FORMAN & FORMAN AND L. J. MOORE, ATTORNEYS FOR APPELLANT.

Appellee company defends the suit on two grounds:

> *First.* Failure of Herd to provide satisfactory proofs of loss.
>
> *Second.* That more than one year elapsed between the date
> of the fire and the bringing of this suit, claiming that by the
> express terms of the policy the claim is barred.

Appellant replies that notice was given to the company of the loss,
and claims the record shows it was, on or before July 6, 1896,
and within sixty days of the loss, in possession of as full proof
and knowledge of the loss as Herd, as J. M. Hocker & Son, local
agents, as H. B. Hart, special agent, and as Glass and Clark, ap-
praisers, could supply, and that this branch of the defense is
captious, quibbling, technical and unsound, both in law and
equity.

As to the plea of limitation, plaintiff replies that continuously from
October 20, 1896, within five months after the loss down to the
present time, appellant Smith as a creditor of Herd, the in-
sured, has had a suit or suits, pending and to which appellee
was a party, in which he has been seeking to coerce the payment
of the $299.53, which the appraisers found on July 2, 1896, the
company owes Herd.

And if the dismissal of the first suit, October 13, 1897, the same day
on which this action was brought, was such a break in the con-
tinuity of the coercive process of the court as will allow the
plea of the statute, that his action is based on the award of
July 2, 1896, and not on the policy, and that the action on the
award would certainly not be barred within five and possibly not
within fifteen years after July 2, 1896.

### AUTHORITIES CITED.

May on Ins., sec. 468, 469, 469D., 483, 484, 487, 488; Kenton Ins.
Co. v. Wigginton, 89 Ky., 333; Sexton v. Montgomery Co. M.
Ins. Co., 9 Barb., 191; Indiana Ins. Co. v. Capehart, 270; German
Ins. Co. v. Hart, 16 Ky. Law Rep., 344; Madison Ins. Co. v. Fel-
lows, 1 Disney (Ohio), 217; Woodbury Savings Bank v. Charter
Oak Ins. Co., 31 Conn., 518; Ky. Law Rep., vol. 5, p. 2, note; Civ-
il Code, sec. 227; sec. 72, Ky. Statutes; Niagara Fire Ins. Co.
v. Bishop, 45 Am. St. Rep., 106; 154 Ill., 9; May on Ins., sec.
493, and authorities cited: Kentucky Chair Co. v. Rochester Ger-
man Ins. Co., 20 Ky. Law Rep., 1751; Hanover Fire Ins. Co. v.
Hatton, 21 Ky. Law Rep., 1533.

THORNTON & KERR, ATTORNEYS FOR APPELLEE.

The policy sued on contains the following clause, viz: "No suit or
action on this policy for the recovery of any claim, shall be sus-

tainable in any court of law or equity, until after full compliance by the insured with all the foregoing requirements, nor unless commenced withn twelve months after the fire.

An award was made as to the amount of the loss sustained by Herd, and it was fixed by the arbitrators at $299. Herd did not accept this award, and did not sue, but Smith, a creditor of Herd, sued on the award and garnisheed the company for said sum of $299.

Appellee claims that Herd never, at any time, made "satisfactory proof of loss," as required by the policy, and as Herd can not recover without such proof, it follows that Herd's creditor can not recover, and if either had any cause of action it is barred by that provision of the policy providing that "No suit shall be sustainable in any court unless commenced within twelve months after the fire.

### LIST OF AUTHORITIES.[1]

May on Insurance, sec. 493 (3 ed.); Soars v. Home Insurance Co., 140 Mass., 343; Northwestern Ins. Co. v. Atkins, 3 Bush., 333; Joyce on Ins., 4 vol., secs. 3181, 3204; Owen v. Howard Ins. Co., 87 Ky., 571; Riddlesbarger v. Hartford Ins. Co., 7 Wallace, 386.

PETITION FOR REHEARING BY L. J. MOORE, ATTORNEY FOR APPELLANT.

This action was not brought on the insurance policy. It was brought on the AWARD. The award was a *novation* of the debt created by the *insurance policy* after the *award* was made, which *award* decided the exact amount due to appellant and was a *novation* of the original *debt*.

The *petition* filed in the *action* in the lower court, asked judgment for the amount of the *award* and nothing more, and it was brought upon the *award* and not upon the *policy;* see Hanover Fire Ins. Co. v. Hatton, Ky. Law Rep., vol. 21, pp. 1533 and 1534. Filed March 10, 1900, not to be reported. This action was brought in exactly the same way the action above quoted was brought and is exactly like it that it is was brought on the settlement made between appellant and appellee.

OPINION OF THE COURT BY JUDGE DURELLE—AFFIRMING.

In May, 1896, appellant sold a house and lot in Lexington to appellee Herd. At the time of the sale the property was mortgaged to a building and loan association, and an insurance policy upon the house for $2,300 in the Hamburg-

Bremen Insurance Company had been made payable to the
building and loan company as its interest might appear.
After the sale Herd took out an additional policy for $700
in the British-American Assurance Company, appellee here.
Within ten days after the policy was taken out the house
was burned. It was provided by the policy that "if fire
occur the insured shall give immediate notice of any loss
thereby in writing to this company, and within sixty days
after the fire, unless such time is extended in writing by
this company, shall render a statement to this company,
signed and sworn to by said insured, stating the knowledge
and belief of the insured as to the time and origin of the
fire; the interest of the insured and of all others in the prop-
erty; the cash value of each item thereof, and the amount
of loss thereon; all incumbrances thereon; all other insur-
ance, whether valid or not, covering any of said property,
and a copy of all the descriptions and schedules in all poli-
cies; any changes in the title, use, occupation, location,
possession, or exposures of said property since the issuing
of this policy; by whom and for what purpose any build-
ing herein described, and the several parts thereof, were
occupied at the time of the fire," etc. The statement in
this clause required to be given within sixty days after
the fire seems to be the satisfactory proof of loss referred
to in other stipulations hereinafter quoted. In the first
clause of the stipulations of limitation upon the liability
of the company it is provided that the "ascertainment or
estimate [of loss or damage] shall be made by the insured
and disinterested appraisers, the insured and this company
as hereinafter provided; and, the amount of loss or damage
having been thus determined, the sum for which this com-
pany is liable pursuant to this policy shall be payable sixty
days after due notice, ascertainment, estimate, and satis-

factory proof of the loss have been received by this com-
pany in accordance with the terms of this policy." In a
subsequent clause there is also a provision that, in the
event of disagreement "as to the amount of loss, the same
shall, as above provided, be ascertained by two competent
and disinterested appraisers, the insured and this company
each selecting one, and the two so chosen shall first select
a competent and disinterested umpire, the appraisers to-
gether shall then estimate and appraise the loss, stating
separately sound value and damage, and, failing to agree,
shall submit their differences to the umpire, and the award
in writing of any two shall determine the amount of such
loss. . . . This company shall not be held to have
waived any provision or condition of this policy, or any
forfeiture thereof, by any requirement, act, or proceeding
on its part relating to the appraisal or to any examinations
herein provided for, and the loss shall not become payable
until sixty days after the notice ascertainment, estimate,
and satisfactory proof of the loss herein required having
been received by this company, including an award by ap-
praisers when appraisal has been required." The policy
contains a further provision that "no suit or action on this
policy, for the recovery of any claim, shall be sustainable,
in any court of law or equity, until after full compliance by
the insured with the foregoing requirements, nor unless
commenced within twelve months next after the fire." The
policy contains the usual provision that officers shall not
have power to waive any provision of the policy unless
the power to so waive is given by the policy. These
provisions are the ones necessary in considering the con-
tentions upon this appeal. The immediate notice of loss
was duly given to the company by J. M. Hocker & Sons,
agents.

Pursuant to the provision for an appraisal, Herd and the
company entered into an agreement for submission to ap-
praisers, by which George Glass and George Clark were
selected as appraisers, the agreement containing this pro-
vision: "It is expressly understood and agreed that this
agreement and appraisement is for the purpose of ascer-
taining and fixing the amount of said sound value and loss
and damage only, and shall not determine, waive, or invali-
date any other right or rights of either party to this agree-
ment. This agreement is made pursuant to the terms of
the policies of insurance on said property." The apprais-
ers by their award determined "the loss and damage to be
the sum of twelve hundred and eighty-three dollars and
seventy cents ($1,283.70), and the sound value thereof at
the time of the fire to be the sum of eighteen hundred and
ten dollars ($1,810)." As the total insurance in both com-
panies upon the property was $3,000, of which $700 was in
appellee company, appellee's share of the loss could not,
in any event, exceed seven-thirtieths of the total loss, or
$299.53. The company's agent appears to have made out
the proof of loss for Herd to sign upon that basis, but
Herd refused to sign it, or to be bound by the award, say-
ing that it was inadequate, and that he would bring suit.
This, however, he has never done. In October following
Smith, a creditor of Herd, appears to have brought a com-
mon-law suit against Herd, making the appellee company
garnishee. The company seems not to have answered un-
til about a year thereafter, when, in October, 1897, 't ans-
wered alleging that it owed Herd nothing. Thereupon
appellant dismissed that suit without prejudice, and on
the same day instituted the present proceeding, which is
an attachment suit upon return of *nulla bona*. In his
petition in equity he set up two judgments; executions

and returns of *nulla bona*; set up the policy of insurance
by appellee company, and the provision for the selection of
appraisers therein; and averred that the house had burned
without Herd's fault; that he had made satisfactory proof
of loss; that he and the company, by its agent, had selected
appraisers to fix the amount of loss or damage which
"Herd should be paid by defendant company," and that
the appraisers had fixed the damage at $299. The petition
prayed for a judgment against the company for that
amount in favor of appellant, and that the payment thereof
be adjudged to be in full satisfaction of the company's in-
debtedness to Herd. The company denied that satisfac-
tory proof of loss had been made, or that the submission to
appraisement was to determine any question except the
amount of the loss, and averred that the submission to
appraisal reserved all other rights of the company except
as to the amount of loss. It pleaded, also, that no suit
had been brought within twelve months after the loss
for any recovery upon the policy, and that no proof of
loss, as required by the provisions above quoted, had been
made within sixty days after the fire. Issue was joined
upon the affirmative averments upon both sides. By an
amended petition, Smith sought a recovery of $808.92
against the company, upon what theory does not fully ap-
pear, but the amendment was not permitted to be filed.
By an amended reply, appellant alleged the fact of the
institution of his action at law against Herd; the suing
out of his attachment against Herd and his property there-
in, and service of the attachment upon appellee company;
that, by reason of the pendency of the action at law,
Herd's right of action was suspended, and the time of its
pendency should be deducted from the period of limita-
tion; the answer by the company; the fact that on the

same day the action at law was dismissed without preju-
dice he instituted this proceeding; that his failure to bring
suit against the company was caused by the company's
failure and neglect to answer as garnishee in the action
at law; and these facts are relied upon as avoiding the
provision of the policy that no action should be brought
after one year from the date of the loss. The case was
heard and submitted, and the circuit court dismissed ap-
pellant's petition.

Appellant's contention is that by the immediate notice,
followed by the appraisement, there was a substantial
compliance with the requirement of proof of loss or a
waiver of it; that the appraisement was an award as to
the amount which the company owed Herd; that the plea
of the provision limiting the time within which suit might
be brought is avoided by the fact that from a period
within five months after the loss he, as a creditor of
Herd, has had suits pending to which appellee company
was a party as garnishee or a party defendant, in which
he sought to coerce the payment of $299 which he avers
the company owed Herd; and, further, that if the dismiss-
al of the first suit in October, 1897, was a break in the
continuity of proceedings, his present action was based
upon the award, and not upon the policy, and therefore
not within the provision referred to. On behalf of appel-
lee company it is claimed that the appraisal was limited,
both by the terms of the policy and by the agreement of
submission, to the ascertainment of the amount of the
loss; that all rights of the company to require proof of
loss and to make any defenses to which it had been en-
titled were expressly by both instruments reserved to it;
and that no proof of loss was ever made as required by
the policy. It is further claimed that if the suit is upon

the policy it was not brought in time, but that it is evidently, as in fact is claimed by appellant, not brought upon the policy, but on the award, and that the award is conclusively shown to be an award, not as to what the company owed Herd, but solely as to the amount of Herd's loss, all other questions between the company and Herd being expressly reserved; that, therefore, such an award does not constitute a cause of action, and that the action should have been upon the policy, in which cause the award would establish one of the constituents of a cause of action.

Without going into the details of the testimony, it may be stated that we have reached the conclusion that in this case the arbitration and award, taken in connection with the immediate notice of loss and the circumstances shown in the testimony as attending the award, show a waiver on the part of the company of what is termed in the policy "satisfactory proof of loss."

The next question is as to the effect which the award had in fixing a liability upon the company. We think it had no such effect, except in so far as it tended to show a waiver of the proof of loss required, and as it did establish one fact necessary to constitute a cause of action upon the policy, to-wit, the amount of the loss occasioned by the fire. Manifestly, it did nothing more than this. By its terms it was limited to this. By the terms of the policy under which the arbitration was had its effect was limited to this. As between the parties, it established what was the amount of the loss occasioned by the fire, and, in the absence of fraud or mistake, the question of the amount of the loss, as between the parties, was distinctly settled, and could not be further inquired into. This seems too plain to require any argument other than

a statement of the conditions of the award itself.  From this it follows that if, as both parties claim, the action is not upon the policy, but solely upon the award, no cause of action is made out, because the award, in and of itself, does not constitute a cause of action.

But, assuming that the petition as amended sufficiently sets out a cause of action upon the policy for the amount fixed by the award, we reach the question whether in such a contract a provision is valid which limits the time within which an action may be instituted to a period less than that fixed by the statute of limitations.  The great weight of authority in this country seems to be in favor of the validity of such a provision, and the general doctrine has been so well stated by Mr. Justice Field in Riddlesbarger v. Insurance Co., 7 Wall., 389, (19 L. Ed., 257), that we quote his argument in full upon this branch of the case: "The objection to the condition is founded upon the notion that the limitation it prescribes contravenes the policy of the statute of limitations.  This notion arises from a misconception of the nature and object of statutes of this character.  They do not confer any right of action. They are enacted to restrict the period within which the right, otherwise unlimited, might be asserted.  They are founded upon the general experience of mankind that claims which are valid are not usually allowed to remain neglected.  The lapse of years without any attempt to enforce a demand creates, therefore, a presumption against its original validity or that it has ceased to subsist.  This presumption is made by these statutes a positive bar, and they thus become statutes of repose, protecting parties from the prosecution of stale claims, when by loss of evidence from death of some witnesses and the imperfect recollection of others, or the destruction of documents,

Smith v. Herd, &c.

it might be impossible to establish the truth. The policy
of these statutes is to encourage promptitude in the pros-
ecution of remedies. They prescribe what is supposed to
be a reasonable period for this purpose, but there is noth-
ing in their language or object which inhibits parties
from stipulating for a shorter period within which to as-
sert their respective claims. It is clearly for the interest
of insurance companies that the extent of losses sustained
by them should be speedily ascertained, and it is equally
for the interest of the assured that the loss should be
speedily adjusted and paid. The conditions in policies re-
quiring notice of the loss to be given, and proofs of the
amount to be furnished the insurers within certain pre-
scribed periods, must be strictly complied with to enable
the assured to recover. And it is not perceived that the
condition under consideration stands upon any different
footing. The contract of insurance is a voluntary one,
and the insurers have a right to designate the terms upon
which they will be responsible for losses; and it is not an
unreasonable term that in case of a controversy upon a
loss resort shall be had by the assured to the proper tribu-
nal, while the transaction is recent, and the proofs re-
specting it are accessible. A stipulation in a policy to
refer all disputes to arbitration stands upon a different
footing. That is held invalid because it is an attempt to
oust the courts of jurisdiction by excluding the assured
from all resort to them for his remedy. That is a very
different matter from prescribing a period within which
such resort shall be had. The condition in the policy in
this case does not interfere with the authority of the
courts; it simply enacts promptitude on the part of the
assured in the prosecution of his legal remedies, in case
a loss is sustained respecting which a controversy arises
between the parties." In a note to the opinion in the

Riddlesbarger case is given a long list of authorities in support of the doctrine there announced. See, also, Joyce, Ins., section 3181.

While this question does not seem to have been expressly passed upon in this State, the validity of such a provision was distinctly recognized in Owen v. Insurance Co., 87 Ky., 574, (10 S. W., 119), where, in an opinion by Judge Bennett, it was held that, under a provision limiting the bringing of such a suit to one year, it was clearly the intention of the parties to the contract that the insuree should have 365 days in which to bring his suit, and that Sundays should be counted to make the number of days, but that he should be as much entitled to the last day of the 365 as to the first day, and, as that day fell upon Sunday, he was equitably entitled to bring his suit upon the Monday following.

Did the bringing of the action at law set up in the amended reply operate to suspend the running of the contract limitation? We think not. That suit does not come within the meaning of section 2545, Kentucky Statutes, as it was not dismissed for want of jurisdiction. And in the Riddlesbarger case, *supra*, it was held: "The action mentioned, which must be commenced within the twelve months, is the one which is prosecuted to judgment. The failure of a previous action from any cause can not alter the case. The contract declares that an action shall not be sustained, unless such action, not some previous action, shall be commenced within the period designated. It makes no provision for any exception in the event of the failure of an action commenced, and the court can not insert one without changing the contract." In that case it appeared that the statute of limitations of Missouri, where the action originated, provided that, if any action commenced within the periods

mentioned the plaintiff should suffer a nonsuit, he might commence a new action within one year afterwards. So, in Joyce, Ins., section 3204, it is said: "The rule is that if a suit is brought within the time provided in the policy, but is dismissed or discontinued for any reason, and a subsequent suit is brought after the expiration of the time limited, though perhaps immediately upon the dismissal or discontinuance of the first suit, the second action can not be maintained." But it is contended that section 227 of the Civil Code of Practice applies. That section provides: "If a garnishee fail to make a disclosure satisfactory to the plaintiff, the latter may bring an action against him, by petition or amended petition, in the same manner, and the proceedings therein shall be the same as in other actions; and the plaintiff may procure an order of attachment in the same manner, and the proceedings thereupon shall be the same, as is hereinbefore and hereinafter authorized concerning attachments, except that the plaintiff's affidavit shall state, in addition to the facts required to be stated in section one hundred and ninety-six, the sum which the defendant owes to the plaintiff's debtor; and the plaintiff shall not be entitled to attach for or recover more than that sum and costs not more than the amount of the plaintiff's claim against his debtor and costs." Under this section it is contended that, as the garnishee did not make a disclosure satisfactory to the claimant, he had the right, either in that suit, by amended petition, or in a separate suit, by original petition, to assert the rights under the lien which it is insisted that he obtained by virtue of the service of garnishee process in the action at law, and that, therefore, the proceeding is a continuous one, the present proceeding being a continuation of the one which was dismissed.

In the first place, the present proceeding was not brought for any such purpose. The former suit is not referred to in the petition or any of the amendments. It does not seek to assert any lien by virtue of the service of the garnishee process. And even if we were authorized to consider the averments of the amended reply as an amendment to the petition, and to hold that the defendant company was not entitled to ignore those averments, as it did, an examination of them discloses the fact that they are not only palpably not intended to assert any such right, but are not sufficient to do so if such right existed. It does not appear by any averment that either of the causes of action against Herd which are set up on this proceeding is the same as the cause of action against him sued on in the action at law. On the contrary, in so far as the averments show anything upon that question, they show that the cause of action sued on in the action at law was not the same as either of the ones upon which the judgments against Herd set up in the present proceedings were obtained; for one of the judgments alleged in the petition was for $799.48, subject to a credit of $100, and the other was for $250, subject to four credits, while the action at law averred in the amended reply is stated to have been "upon a promissory note for over $250." The fact is that the present suit was an ordinary proceeding upon return of *nulla bona*, and neither at the time of filing the petition nor of filing the amended reply could there have been any idea of relying upon section 227 of the Code. The judgment is affirmed.

Judges Guffy, White and O'Rear dissenting from that part of the opinion which holds that the contract limitation is valid.

Dissenting opinion by Judge Guffy in which Judges White and O'Rear concur:

Appellee Herd had an insurance policy issued by the British-American Assurance Company upon certain property in Lexington, Ky. Soon after the policy was issued the property was destroyed by fire. After an arbitration as to the sound value and loss sustained was had, Herd seems to have declined to take any steps to recover or collect the amount due. Soon thereafter the appellant sued Herd, and garnished the insurance company, which seems not to have answered for more than a year after the loss, and then denied any indebtedness to Herd. Thereupon appellant dismissed his suit, and immediately brought suit in equity, seeking a recovery against the insurance company. Among other defenses relied on by the company was the plea of limitation mentioned in the policy, it being provided in the policy that no suit in law or equity should be maintained upon this policy unless commenced within twelve months from the fire. The majority of this court holds that the twelve-months' limitation is valid and binding, and the court below dismissed appellant's petition; hence this appeal.

I respectfully and earnestly dissent from such conclusion. It is provided by section 2514, Kentucky Statutes, that actions other than these for the recovery of real estate shall be commenced within the "following periods," and not afterward. The period mentioned in said action is fifteen years, and among the causes of action mentioned is a bond or obligation for the payment of money or property, or the peformance of any undertaking. The above is a general law of the State. Section 59 of the Constitution of the State provides that "the General Assembly shall not pass local or special acts concerning any

of the following subjects or for any of the following pur-
poses." Among the subjects and purposes mentioned
is to regulate the limitation of civil or criminal causes.
It must be conceded that the General Assembly could not
pass an act making one year a bar to a recovery upon the
policy in question, yet this court holds that the defendant
by a stipulation in the policy can create such a bar. In
other words, the insurance company and the assured can
by agreement make valid as between them a statute of
limitation different from the general law, and a statute
or bar that the lawmaking power of the State could not
enact. If parties can by contract create a statute of limi-
tation, then we may have as many different limitations
as the skill or caprice of parties may desire to agree to.
One of the chief objects of the Constitution was to abol-
ish or prohibit special legislation, but, if the majority
opinion in this case is to be the law of the State, special
legislation, or what is the same thing, can be enacted by
parties to all contracts. If parties can fix twelve months
as a bar to a right to recover, they can as well make
twelve days' delay bar a right of action; for, if the opin-
ion in this case has any foundation to rest upon, it is
solely upon the agreement or consent of the parties, and
it necessarily follows that, if they can make valid one
length of time as a bar, they can make any time, long or
short, a bar,—either shorten or lengthen the time. One
insurance company may require suits to be brought in
thirty days, and another may extend the time thirty years.
This question was, in effect, decided by this court in Tel-
egraph Co. v. Eubanks, 100 Ky., 604, (38 S. W., 1068),—
-a reported case. In that case it was part of the contract
as to sending messages that the claim for damages must
be filed within sixty days after default. In discussing

that defense, this court said: "It is the province of the
lawmaking power to prescribe the limit in which an ac-
tion may be brought; hence the limitation of sixty days,
if not an attempt to vary the statute of limitation, would,
if enforced, have that effect." In Gorley v. City of Louis-
ville (Ky.) 47 S. W., 263, it was decided that section 2882,
Kentucky Statutes, which required all suits for salary or
compensation for services against the city to be brought
within six months after the accrual of the cause of action,
was unconstitutional and in violation of subsection 5 of
section 59, heretofore referred to. In City of Louisville
v. Kuntz (Ky.) 47 S. W., 592, the city pleaded as a defense
a statute for the government of cities of the first class
which provided that actions against such cities for in-
juries to persons or property must be begun within six
months after the cause of action accrued. This court held
the said statute to be unconstitutional because in conflict
with said section 59. Both of these cases were carefully
considered, and the questions involved thoroughly dis-
cussed, and are both reported cases. The reasoning in
the cases, *supra*, is unanswerable, and, to my mind, conclu-
sively settles that the one-year limitation in the policy in
question is invalid and of no effect. Is it possible that
an insurance company is more potent than the General
Assembly of the great State of Kentucky? Can an insur-
ance company or any individual make a statute of limita-
tion despite the Constitution? There might be some rea-
son assigned why the chief city of the State should have
a shorter statute of limitation than the citizens of the
State generally. It might be argued that, in the rush
of commercial life and press of business, persons dealing
with the city should promptly press their demands; yet
it was held, and properly held, in the case, *supra*, that the

Constitution forbade any such legislation. · Yet it seems an insurance company may fix any limitation it desires, if the insured will accept such a policy, and it may safely be assumed that but few ever read or understand near all the conditions and stipulations in the modern insurance policies.

The decisions of the courts of other States are entitled to no weight in a case like this unless the constitutions and laws thereof are the same as ours, and even then should not be followed unless sound. The Federal Government has no general statute of limitation; hence the decisions of the Supreme Court as to agreements such as is claimed in this case can in no wise affect the question, nor be considered authority in support of the majority opinion. I confidently assume that no decision of this court can be found heretofore which sustains such an agreement made after the adoption of the present Constitution. I have found one case in which the question of an attempt to extend the statute of limitation by agreement was considered, and in an elaborate opinion this court decided that such an agreement was invalid and could not be enforced. I refer to the case of Wright v. Gardner, 98 Ky., 454, (33 S. W., 622), (35 S. W., 1116). In this case it appeared that J. A. Wright was an inspector of tobacco in 1893; that as such he entered into a contract with J. T. Wright and others, who were brokers buying tobacco, whereby J. A. Wright undertook to guaranty to the brokers aforesaid that the samples drawn by him should correctly represent the quality and character contained in the hogshead, and to further guaranty that if within six months in the United States, or within nine months in any other country, a second inspection showed that the first was not correct, he (Wright) would make

good any loss to said brokers by reason thereof.   Another
contract to the same effect was made between other parties
and said Wright.    It was sought to enforce these con-
tracts.    Section 4805, Kentucky Statutes, fixed ninety days
within the United States, and six months in other coun-
tries, as the period in which such claims should be made.
This court held that the contracts relied on were invalid
because of the statute which fixes a time, thus holding
that parties could not by contract extend the period of
limitation.   It does seem to me that, if a contract to ex-
tend the period of limitation is void, a contract to shorten
the same must also be void.   I quote as follows from the
opinion, *supra*:  "Then the question presented is whether
it is lawful for parties, by a contract in reference to a
matter of public concern, in advance, to so ignore, set
aside, and annul the statute of limitation established
and fixed by the Legislature in reference to the business
and the subject-matter about which they are contracting.
While it is true that the statute of limitation declared
by the Legislature as applicable to the time within which
demands must be made for these reclamations is not
mentioned in either contract, yet it is manifest that this
extension of time was the material thing about which they
were contracting, and which they undertook to abrogate
or ignore.   This extension of time is undertaken to be sup-
ported upon behalf of appellant by an allegation that the
time fixed by the parties to these two contracts was in
accordance with the long-established usage and custom
of the tobacco trade done by these public warehousemen
in the city of Mayfield, and of which all parties had knowl-
edge,—both seller, inspector, and buyer; and, it is argued
by appellant's counsel that this longer time than that
fixed by the statute was but reasonable, and in fact de-

manded by the necessities of said trade, and that the
given time by the statute was and is too short.   In effect,
it is for the parties interested in these contracts to say
that, notwithstanding the Legislature had established
by law a time within which these reclamations must be
made, yet said time is too short, and that, though such
statutes apply to a public business, and were passed to
regulate the same, yet we will now, by reason of this cus-
tom and by these contracts, establish a different period of
limitation of our own.   Of course, if this may be done by
any combination of sellers of tobacco, the inspector, and
the buyers of same, on any one of the markets of the
State, then it may be done on each and all of the mar-
kets, and thus the general law be set at defiance, and
other laws established by these several contracting par-
ties, be submitted for the law of the State.   As to
this pre-existing custom, claimed to have existed in the
tobacco trade on that market before the passage of the
statute of limitation in question, it may be said to be
axiomatic that no custom can be established or main-
tained in opposition to an express statute of the Legisla-
ture; that customs of trade may exist where they do not
contravene an express statute, but, when the Legislature
speaks, then all pre-existing customs in conflict therewith
must cease.   Custom prevails in the absence of statute
law, not in defiance of it.   In speaking of statutes of lim-
itation, Mr. Wood says that, while formerly they were
not regarded with favor by the courts, 'latterly they are
considered as beneficial and as resting on principles of
sound public policy, and as not to be evaded except by
the methods provided therein. Indeed they are now termed
"statutes of repose," and are regarded as essential to the
security of all men.'   Section 4.   In 13 Am. & Eng. Enc.

Law, 692, it is said: 'Statutes of limitation are now al-
most universally regarded as statutes of repose, and lib-
erally construed.' In Moxley v. Ragan, 10 Bush., 159, this
court said: "The right to plead the statute of limitations
is a personal privilege, but will it be insisted that an
agreement never to plead the statute is binding? If so,
the grocer and merchant, and all others engaged in the
business affairs of life, would have only to agree with
those who promised to pay, verbally or in writing, that the
statute of limitations should never be relied on, . . .
in order to render nugatory these wholesome laws enacted
for the peace and welfare of society, and in accord with an
enlightened public policy.' And again, same case, speak-
ing of a contract in advance to waive the benefit of all
exemption laws, as against the debt contracted, the court
said: 'A contract fraught with such consequences to the
family of a debtor is totally at variance with public pol-
icy, and therefore void.' It now appears to us that the
statutes of limitation declare the public policy of the
State in reference to actions brought as clearly as the
policy of the State is found in its exemption laws in favor
of the family of debtors. In the same case the court
quotes a decision by Judge Denio, saying that 'the law
does not permit its process to be used to accomplish ends
which its policy forbids, though the parties may, by a
prospective contract, agree to such use.' In Allen v. Fro-
man, 96 Ky., 317, (28 S. W., 497), this court said: 'It has
become the legislative policy of this State to fix in every
case a limit of time for beginning every action or proceed-
ing for relief.' Mr. Bishop, in his work on Contracts (sec-
tion 439), says that 'the law is to be deemed a part of
every contract.' And in section 442 he says it is be-
cause of this doctrine that the law constitutes a part of

every contract 'that no stipulation of parties can cause their rights to flow otherwise than in the channels of the law.' Again, in section 477, he says: 'To enforce a contract in direct subversion or evasion of any regulation which the law has made for the general good would be against sound policy.' Again, in section 473, the same author says: 'A contract involving any one of the other interests which the law cherishes, though to do what is neither indictable nor prohibited by a statute, termed a contract against public policy (or sound policy), is likewise void.' "

The majority opinion says that the great weight of authority in this country seems to favor the validity of such a provision; that is, such a limitation. The opinion of the United States Supreme Court in Riddlesbarger v. Insurance Co., 7 Wall., 389, (19 L. Ed., 257), is referred to and liberally quoted from. That opinion is not entitled to any weight in this case, for the reason that the United States has no general statute of limitation. It is worthy of note that that opinion proceeds upon the idea that a statute of limitation is in part, at least, allowed to bar a claim because time raises a presumption of payment. The modern doctrine is that it is a statute of repose, and that it is wholly immaterial whether the claim is paid or not, and that the statute is a complete bar. It is not the policy of law to encourage litigation or impel the creditor to make haste to prosecute his debtor. Upon the contrary, the law does not encourage a multiplicity of suits. It may be true, as stated in the quotation, that it is to the interest of insurance companies that the extent of losses sustained by them should be speedily ascertained; but it is equally true that the insured should be entitled to the time given by the general law of the State

to enforce their demands against insurance companies. It is stated in the quotation, *supra*, that a stipulation in a policy to refer all disputes to arbitration is invalid because it is an attempt to oust courts of jurisdiction by excluding the insured from all resort to them for remedy. I am unable to see the difference between ousting the courts of jurisdiction to determine a controversy, and ousting them of jurisdiction to hear and determine a controversy within the period prescribed by the general law of the State. The opinion in Owen v. Insurance Co., 87 Ky., 574, (10 S. W., 119), is referred to in the majority opinion. It will be seen by an examination of that case that this court did not hold the special limitation clause either valid or invalid, but, at most, seemed to concede its validity, but held that the insured in that case was not barred. But, if it be conceded that the opinion did recognize the stipulation as valid, yet that opinion was rendered under the Constitution of 1849, under which special statutes of limitation as to particular companies were not prohibited by the Constitution. I venture the opinion that no court of last resort in any State having the same provision in its Constitution as section 59 in our Constitution has ever held any such stipulations as the one under consideration to be valid or binding. So far as I am advised, the tendency of all the courts is against the validity of any such stipulations. The Supreme Court of Nebraska, in Barnes v. McMurtry, 29 Neb., 184, (45 N. W., 286), had a similar provision under consideration, and in discussing the question said: "The most that can be claimed for these words is that they constitute a contract between the parties for a special limitation differing from, and much less than, the statute. But to support a contract there must be a consideration. If there be no consideration in

support of the provision, it would be, like any other con-
tract having no consideration to support it, a *nudum pac-
tum.* If such a provision was in the contemplation of
the parties when the application for insurance was made,
or was in the application itself, then, no doubt, the orig-
inal consideration paid for the insurance, and the policy
issued thereon, would bind the insured; but a mere volun-
tary restriction, not in the application nor in the contem-
plation of the parties, placed in the policy as a proviso,
in print too fine to be read by a person of middle age
without spectacles, can not be considered a part of the
contract. Suppose A. should apply to B. for a loan of
money, and B., believing A. to be an honest man, should
send him the money with a request that he forward his
note for the same; and suppose A. should send a note
for the amount borrowed, in proper form, but should
write on the margin thereof that B. must bring an action
on the note six months after it became due, or be barred;
would such a proviso bar the action in less than the
period fixed by statute? That it would not will be con-
ceded. The contract in such case was for the loan of a
certain amount of money for a specified period at lawful
interest, and any provision restricting the right of re-
covery would be without consideration and void. So in
the case of insurance. A party who desires insurance
on his property applies to an agent of some company in
which he has confidence, and is furnished with a blank ap-
plication to fill out, and does prepare the same and deliver
it to the agent and pays the premuim demanded. The
premium he has just paid is for the insurance, and he
may reasonably suppose that, having paid the ordinary
rates, the company in case of loss may pay the same
promptly after proof thereof is duly made. If it fails to

do so, he may reasonably expect that the time to bring an
action against the company is the same as upon any other
written contract, where there has been a breach thereof.
A policy is issued, and, he believing the company to be
honorable and to have based its policy on the application,
the policy is not read, but placed among his valuable pa-
pers, and only after a loss occurs is it examined. Every
person familiar with the subject well knows that such is
the ordinary course in very many cases, at least. If it
is sought to interpose conditions or restrictions of this
kind, they should be set forth in the application, or be
brought to the attention of the insured when the pre-
mium is paid; otherwise, unless there is a consideration
shown for them, they will not be sustained. If it is said
that the business of insurance is peculiar, and that it is
necessary to try the cases as soon as possible after a loss
occurs, so the proof may be available, the answer is that
the insurer well knows that it may be called upon to
make good the loss at any time after one occurs, and has
the right and authority of any other litigant to take and
perpetuate testimony; and there seems to be no good rea-
son for an exception in favor of one company more than an-
other. In the many complex actions brought against rail-
way, telegraph, and other companies, where the defense
largely depends upon the testimony of witnesses, it has
never been seriously urged that such companies were en-
titled to a shorter limitation than other persons because
of the liablity of their witnesses to go away, or for other
causes. It is the policy of the law to have but one law
of limitations alike for the poor and the rich, for the
wealthy corporation and the insolvent; and, to establish
a limitation by contract, there must be a sufficient con-
sideration, otherwise it will not be available. In the

very able exposition by Lord Mansfield, in Carter v. Boehm, 3 Burrows, 1905, of statements made by the insured to obtain a policy, and their effect, the general rules govern. ing the rights of the insured and insurer are considered at length; and an examination of the early causes will show that a special limitation within which the action should be brought in case of loss was a part of the original contract. Such a contract was absolutely essential at that time, as the statute of limitations was held to be one of presumption that the debt was paid, and not, as at present, one of repose." In Phenix Ins. Co. of Brook. lyn v. Rad Bila Hora Lodge, 41 Neb., 29, (59 N. W., 755), the court again considered a special limitation in an insurance policy, and said: "The limitation clause in the pol· icy was as follows: 'No suit or action against this com pany shall be sustainable in any court of law or chancery unless commenced within six months next after the loss shall occur, any statute of limitations to the contrary not· withstanding.' A respectable line of authorities is found in support of the validity of similar provisions. There have been at least two cases in this court whose language indicates that such provisions, under certain conditions, are enforceable. Barnes v. McMurtry, 29 Neb., 178, (45 N. W., 285); Insurance Co. v. Fairbank, 32 Neb., 750, (49 N. W., 711). In no case, however, has effect been given to such a provision in this State. Notwithstanding the authorities upon the subject, the writer would hesitate to commit himself to the view that the parties to a con· tract may bind the courts to a period of limitations other than that prescribed by the statute." In Miller v. Insurance Co., 54 Neb., 122, (74 N. W., 416), the supreme court again had under consideration the same provision here-

tofore discussed. The insurance company pleaded the
period of limitation fixed in the policy. The case was
tried by the court without a jury, and the court found in
favor of the plaintiff as to all the issues of the pleading,
except as to the issue that the action was not brought
within six months from the time the cause of action ac-
crued, as provided in the policy; and upon that issue the
court found in favor of the defendant, dismissing Miller's
action. The opinion then says: "The statutes of this
State provide in what time all actions may be brought,
and a contract which provides that no action shall be
brought thereon, or for a breach thereof, unless within a
time therein specified, which is different from the time
which the statute fixes for bringing an action on such
contract or for a breach thereof, is against public policy,
and will not be enforced by the courts of this State. Barnes
v. McMurtry, 29 Neb., 178, (45 N. W., 285). In Eagle Ins.
Co. v. Lafayette Ins. Co., 9 Ind., 443, such a clause was
held to be absolutely void. Phenix Ins. Co. of Brooklyn
v. Rad Bila Hora Lodge, 41 Neb., 21, (59 N. W., 752), was
a suit on an insurance policy which contained a clause
similar to the one in question here. Discussing the valid-
ity of such a provision in a contract, Irvine, C., while ad-
mitting that a respectable line of authorities supports the
validity of such a stipulation, said: 'In no case, however,
has effect been given to such a provision in this State.
Notwithstanding the authorities upon the subject, the
writer would hesitate to commit himself to the views
that the parties to a contract may bind the courts to a
period of limitations other than that prescribed by stat-
ute.' The court adopts the views of the commissioner
as expressed in that case, and declines to be bound to a
period of limitations fixed by any contract, other than the

period prescribed by the statute. The judgment is reversed, and the cause remanded, with instructions to the district court to enter a judgment in favor of the plaintiff in error upon the special findings made by the court."

It will be seen from the foregoing that the tendency of modern thought and judicial decisions is against the validity of any such special provisions in contracts. A recognition of such provisions would inevitably tend to greatly increase litigation, and bring up innumerable contests as to the waiver of such stipulations, and as to what would estop a party from relying on such stipulations. Moreover, it seems clear to me that one of the leading features and objects of the present Constitution was to have uniformity in the law and to prohibit special legislation, and to prevent undue advantage being taken of the uneducated, unthinking, and unwary. The object of insurance is to obtain indemnity for loss by fire, or payment on life insurance policies; and, as a general rule, the insured party will never look in a policy to see whether or not there is any statute of limitation embodied. I doubt if two per cent. of the parties now in the State holding insurance policies have any idea that there is any stipulation in such policy requiring suit to be brought within a certain time. The applications for insurance have no such stipulation, and it would be a harsh rule to require a man to be bound by a stipulation in a policy different from the general law of the State, unless he had agreed knowingly and specifically to such a provision. I am, however, clearly of the opinion that no agreement, however clearly made and assented to by both parties, can have the effect to shorten the general statute of limitation, or bind a court to hold any contract barred within a shorter period

than is provided for by the general law of the State. I think my conclusion is fully sustained by the decisions referred to by me in the first part of this opinion. For the reasons indicated, I dissent from the majority opinion herein, which holds the twelve-months provision in the policy in question to have any validity whatever.

Judges White and O'Rear concur.

Petition for rehearing by appellant overruled.