FITSCHEN ET AL., RESPONDENTS, *v.* THOMAS ET AL., APPELLANTS.

TRIAL PRACTICE — *Burden of proof.* — Where defendants' answer admits the contribution by plaintiffs of the aggregate sum as alleged in the complaint, but avers the expenditure of a greater sum, the excess being paid by defendants, which is denied in the replication, plaintiffs were not bound to introduce any evidence upon this point until defendants had produced theirs.

SAME — *Testimony.* — The testimony of a witness will not be stricken out because he testifies to the best of his recollection; and the weight to be given it is a matter for the jury.

INSTRUCTION — *Harmless error.* — Where an instruction, standing alone, is erroneous, but when in connection with other instructions the law is correctly stated, the error is harmless.

SAME. —It is not error for the court to refuse an instruction requested by defendants which is based upon a different theory from that contained in their answer.

EVIDENCE— *Verdict.* — Whenever there is any evidence to support the verdict or findings of the court, and there is no manifest error, neither will be interfered with.

SPECIFIC PERFORMANCE—*Reformation of contract.* —Defendants had agreed with plaintiffs to relocate a disputed mining claim, for the purpose of defeating a suit by the prior claimant affecting the titles of plaintiffs to certain lots, the expenses incident thereto to be shared proportionately, and upon a successful termination of the suit each lot owner to receive a conveyance of his share of the disputed and relocated claims. Money was collected and expended to the knowledge of the defendants, they receiving a part of it, and asserting that they did so for the lot owners. The attorney for the defendants prepared the contract, and it was read over to one of the defendants and signed by him after one of the lot owners assented to its correctness, and afterwards signed by the rest of the defendants. In an action for specific performance the defendants pleaded a mistake discovered two years prior, but which they had never before claimed, and which they did not attempt to account for on the trial. *Held,* that the contract would not be reformed on the ground of mistake.

*Appeal from Second Judicial District, Silver Bow County.*

The action was tried before DE WOLFE, J.

*Robinson & Stapleton,* for Appellants.

*Knowles & Forbes,* for Respondents.

LIDDELL, J. — This is a suit to enforce the specific performance of a contract, by requiring the defendants to make titles to the plaintiffs of certain undivided portions of the surface ground embraced within the boundaries of the patented mine, situated in the city of Butte, and known as the "Destroying Angel."

Briefly stated, the facts which preceded this litigation are as follows: In 1882, the plaintiffs and defendants, and one William H. Archer, were the owners of certain lots of ground in the city of Butte, upon which some of them had erected buildings, and were engaged in business. These lots were situated either in whole or in part upon ground embraced within the limits of what was then known as the "Diadem Lode Claim," and which was then claimed by Lea Mantle and others, who had instituted an action in ejectment against all of the present plaintiffs and defendants.

The defendants in that suit, now the parties to this action, with the exception of Archer, having a common interest in defeating the suit of Mantle and others, held a meeting to devise some plan and means for defending the suit.

The result of the meeting was a determination to fight the Mantle suit; and a flaw having been discovered in the location of the Diadem lode, it was determined, upon the advice of counsel, by Thomas, Rains, and Archer to relocate the same ground as a mining claim, which should be known under the significant name of the "Destroying Angel." This new claim embraced within its limits the ground claimed by the Diadem, and, although of the same length, it extended to a considerable distance on either side of it. Well knowing that the success of the Destroying Angel would defeat the proprietary rights of Mantle and others, the defendants in the ejectment suit resolved to cast their fortunes with the claim bearing this ominous name.

To that end the other lot owners entered into an agreement with their co-defendants, Archer, Thomas, and Rains, whereby it was agreed that each lot owner should pay his proportion of the expenses attending the locating of the Destroying Angel, of obtaining patent therefor, of fighting the suit of Mantle and others, and of fighting the adverse claim of the Diadem lode; and, upon the successful termination of the litigation, they agreed to convey to each lot owner the lot or lots which he then claimed upon the Diadem or Destroying Angel, and any surface ground which might be left over upon the Destroying Angel should be distributed among those who contributed to the litigation, in the proportion which each contribution bore to the whole amount expended in said litigation. On the 19th of January, 1884, Archer, Thomas, and Rains executed their written contract to carry out this verbal agreement, which was left in the possession of J. F. Beck, one of the interested parties, and chairman of the committee appointed at the meeting heretofore referred to. The plaintiffs each responded with their contributions, which were consumed in paying counsel fees, locating, representing, and surveying the mine, and in defraying the expenses of the litigation going on between the Destroying Angel and the Diadem Lode Claim.

When the contest terminated in favor of the former, and the suit of Lea Mantle and others were dismissed as to the present plaintiffs, they demanded titles to their respective lots and interests in the surface ground of the Destroying Angel, and

upon the refusal of the defendants to comply with their agreement, they instituted the present suit.

Defendants admit their signature to the written agreement, but aver that there was a mistake in the act, which does not express the true contract or intention of the parties. They insist that it was never their intention to part with, nor of the plaintiffs to acquire, title to anything but their lots which were situated on the Diadem lode, and such parts of lots as were located on the Diadem and the Destroying Angel; and that the agreement to distribute, *pro rata*, the remaining surface ground upon the Destroying Angel, as set forth in the contract, was erroneous, and never in fact entered into by and between the parties. Two other grounds of defense are relied upon, and which will be noticed further on.

Special findings were made by the jury and adopted by the court as the basis of the decree, and from an order overruling a motion for a new trial, as well as from the judgment, the defendants have appealed the case to this court.

Proceeding now to consider the errors complained of in the rulings of the lower court, we will examine them in the order in which they appear in appellants' brief, reserving, however, for the last the question of the sufficiency of the evidence to support the findings and decree.

It is claimed that the court erred in denying the motion for a nonsuit, for the reason that the evidence of the plaintiffs failed to show that they had paid the respective amounts due by them as their contributions towards the maintenance of the litigation with the Diadem lode. The complaint alleges that the particular sums contributed by each plaintiff or his grantor for the purpose of defraying the expenses of the litigation amounted in the aggregate to $1,445.53, and this is admitted in the answer; but defendants contend that there was expended at least $1,900, and that the difference between the two sums had been paid by them in excess of the respective contributions. Inasmuch as this excess of expenditure was denied in the replication, the plaintiffs were not bound to introduce any evidence upon the subject until the defendants had produced their evidence upon the point. This statement is sufficient to refute the charge of error in this matter.

The next objection is to the refusal of the court to strike out the testimony of the witness Singer, for the reason that he was unable to state positively whether the defendant Thomas was present at a meeting of the defendants in the Mantle suit, had for the purpose of devising ways and means to carry on the litigation with Mantle and others and the Diadem lode with the Destroying Angel. We find that this witness testified to the best of his recollection and belief that Thomas and Rains were both present at the meeting; in fact, he was tolerably sure of it, but on account of the lapse of time he would not be positive. While it is more desirable that a witness should be positive in his testimony, it is sufficient if he testifies to the best of his knowledge, recollection, and belief; and the weight to be given it is entirely a matter for the jury. The motion to strike out was more to the effect of the testimony than to its admissibility.

The third error complained of was in giving a certain instruction asked for by plaintiff. Counsel for defendant contends that it misstates the law, and is ambiguous; but when taken in connection with the other instructions, there is no error to the prejudice of the defendants. As a general rule, parol evidence is inadmissible to contradict or vary the terms of a written instrument, but, as fraud and error vitiate all contracts, it is a principle of universal jurisprudence that parol testimony may be used to establish such facts. The point under consideration was whether or not there had been a mistake in the preparation of the written contract, and that was ascertained from all the surrounding circumstances. While the trial judge instructed the jury in one part of his charge "that parol evidence was not introduced for the purpose of enabling them to decide what was the original agreement, but merely to enable them to say if there was any mistake in drawing the agreement, and if so to reform it," yet in another instruction he modifies this by directing them to find for the defendants, if, upon examining the evidence, they become satisfied that the written agreement does not express the true contract between the parties. Now under the law this was certainly as favorable to the defendants as they had any right to expect, and stated their claims more broadly than it should have done. But in inquiring into the question of whether there had been any mistake in the agreement, it would be necessary first

to find out whether both parties understood the contract as claimed by defendants; and to prove this fact, as well as the error in the preparation of the written act, parol evidence was certainly admissible. Had the objectionable expression stood alone, and without the modification in that and another instruction, we would have sustained the objection, and granted a new trial. But as the instructions read on the whole, the jury were directed to decide from the testimony what was the real agreement between the parties; and if the written contract did not fairly express it, then to reform and correct the instrument. Under the circumstances the error complained of is harmless.

Defendants now complain of the refusal of the trial judge to instruct the jury " that if the plaintiffs, at the time of entering into the contract, thought they were contracting in regard to all the surface ground included within the boundaries of the Destroying Angel, while the defendants and Archer thought and understood that they were contracting only in regard to that part of the Destroying Angel Lode Claim which was within that part known as the 'Diadem,' then there was a mutual mistake as to the subject-matter of the contract, and consequently no contract." Considering the allegations in the answer that the mistake was mutual, and that both parties intended and did contract only in relation to the surface ground comprised within the limits of the Diadem, this instruction was properly refused. After alleging the mutual mistake of all parties, and that the real agreement was the one set out in defendants' answer, it was outside of the issues to ask for an instruction based upon the theory that each understood a different agreement. There was a *prima facie* case against the defendants, and the plaintiffs were standing upon the defendants' acknowledged, unambiguous, written agreement. Now, under the issues, the defendants could not show that there was no agreement entered into; for they were limited to proving that all parties had understood and agreed upon a contract different from that contained in the written agreement, to wit, the contract as set forth in their answer. If this had been a suit by the defendants to avoid the contract on the ground of mistake as to the subject-matter thereof, then the instructions asked would have been proper.

Speaking of the equitable relief to be granted in cases of mistake, Story, in his work on Equity Jurisprudence (9th ed.), section 147, says: "There must always be shown either the mistake of both parties, or the mistake of one with the fraudulent concealment of the other, to justify a court of equity in reforming a contract." This view of the law is admirably expressed by Chief Justice Spencer in the case of *Lyman* v. *United Ins. Co.* 17 Johns. 376, where he uses the following language: "It is not enough, in cases of this kind, to show the sense and intention of one of the parties to the contract; it must be shown incontrovertibly that the sense and intention of the other party concurred in it — in other words, it must be proved that they both understood the contract as it is alleged it ought to have been, and as in fact it was, but for the mistake. It would be the height of injustice to alter a contract on the ground of mistake, where the mistake arises from misconception by one of the parties in consequence of his imperfect explanation of his intentions. To make a contract it is necessary that the minds of the contracting parties agree on the act to be done. If one party agrees to a contract under particular modifications, and the other party agrees to it under different modifications, it is evident there is no contract between them. If it be clearly shown that the intention of one of the parties is mistaken and misrepresented by the written contract, that cannot avail, unless it further be shown that the other party agreed to it in the same way, and that the intention of both of them was, by mistake, misrepresented by the written contract." (See, also, Hilliard on Vendors, p. 12, § 45; and p. 309, § 9.)

In adopting the findings of the jury as to the amount of money expended in securing title to the Destroying Angel, and in defending the suit of Mantle and others, we are unable to agree with counsel that the court committed an error. The evidence of the defendants upon this point is unsatisfactory, when it should have been clear and explicit. They do not state with precision how it became necessary to incur this additional expense, nor the various items which go to make up the sum. Besides, it is certainly established that defendants have received considerable sums in addition to the amounts contributed by the plaintiff, which would cover any reasonable expenditures by the

former.  In passing upon this point, we may as well say that
the objection to the finding of the court that "the defendants
expended their *pro rata* of the amount of the pool" in and
about securing title to the Destroying Angel is sufficiently sup-
ported by the evidence, and will not be disturbed.   Whenever
there is any evidence to support the verdict or findings of the
court, and there is no manifest error, neither will be interfered
with.

. We now come to consider the case upon its merits, and are
convinced that it is altogether with the plaintiffs.   The record
contains abundant evidence to show that the Destroying Angel
was located for the express purpose of defeating the suit of the
Diadem claimants; that this location was made under the advice
of the attorney, and for the benefit of defendants in that litiga-
tion; that the lot owners (the present defendants and plaintiffs)
had a meeting to devise means and ways for defending that suit;
that at that meeting an assessment was agreed on, and a chair-
man and committee were appointed to collect the necessary funds.
The money was collected and paid out to the amount of $1,445.53,
as alleged, and was consumed in defraying the expenses of the suit
with Mantle & Co., in locating, surveying, and doing the work
necessary to represent the Destroying Angel, and costs of pro-
ceedings in the land office, and in the contest which arose in the
courts between the two conflicting mining claims.   We are also
satisfied that the defendants knew. of the expenditure of the
money; that they received a portion of it in their own hands;
and that each of them often asserted that they were acting for
the lot owners, and did not desire to make any money off of
their co-defendants.   It is also incontestable that the attorneys
for the defendants prepared the written agreement now sued on
at the instance of the defendant Rains; that it was read over
to him before signing; and, upon his inquiring of Beck, the
chairman of the lot owners' committee, as to its correctness, and
receiving his assent, it was then signed by Rains, and afterwards
by the other defendants, and the document was then deposited
in Beck's hands as the proper custodian.   The error, if any,
was discovered by Thomas about two years before the trial of
this suit, yet he made no effort to reform the contract, and never
claimed there was any error or mistake in the agreement until

the institution of this action. · The Mantle suit was commenced in 1882, while the present case was begun in March, 1887.

It must be borne in mind that the plaintiffs sue upon an unambiguous, written contract to convey title to this ground, and that the defendants admit the execution of the instrument, but contend that there is a mistake in it, in this, that it does not represent the true contract between the parties, which they set out in their answer. This is a special defense, which imposes the burden of proof upon them, and which they must also make out by a preponderance of evidence. It is true that the defendants assert their view of the contract, but the plaintiffs emphatically deny any such understanding, and by satisfactory proof establish the fact that the written instrument expresses the true intention of the parties. It is not noticeable in this connection that neither of the defendants, nor their attorney who prepared the written act, gave any testimony as to the preparation of the instrument; nor is there any attempt to explain the manner by which the alleged mistake crept into the writing. When a party has in his possession evidence which would illustrate his case, and he fails to produce it, the presumption will be against him.

"If the proofs are doubtful and unsatisfactory, and the mistake is not made entirely plain, equity will withhold relief, upon the ground that the written paper ought to be treated as a full and correct expression of the intent until the contrary is established beyond reasonable controversy." (Story on Equity Jurisprudence, § 152, and authorities there cited.) The same eminent author further declares, in the preceding section, that when both parties to the contract are equally innocent, and there has been no surprise or concealment, the mistake, whether mutual or intentional, affords no ground for equitable interference.

Without expressing any opinion as to whether defendants have been guilty of laches or unreasonable delay in asking to reform the contract, there are sufficient grounds already considered to induce us to affirm the order and decree of the lower court, which is accordingly done, at cost of appellants.

BLAKE, C. J., and BACH, J., concur.