PARCHEN, RESPONDENT, *v.* CHESSMAN, APPELLANT.

(No. 3,389.)

(Submitted May 28, 1914.  Decided June 15, 1914.)'

. [143 Pac. 631.]

*Equity — Reformation of Instruments — Mistake — Statute of Limitations—Waiver of Defense — Public Policy — Laches — Correction of Mistake—Demand—Promissory Notes—Renewal —Consideration.*

Public Policy—How Determined.
1.   What constitutes the public policy of a state and what is contrary to it are questions to be determined by reference to its legislative enactments, and, in their absence, to the decisions of its courts.

Statutes of Limitations—Defense may be Waived.
2.   The defense of the statute of limitations may be waived by the party for whose benefit it is provided, either before or after the prescribed limit, and if it is not invoked at the proper time and in the manner prescribed, it cannot avail him even though it appears incidentally that the cause of action alleged against him is completely barred.

[As to necessity of pleading statute of limitations as defense in equity cases, see note in 8 Ann. Cas. 379.]

Promissory Notes—Statute of Limitations—Waiver—Public Policy.
3.   *Held,* that a stipulation embodied in a promissory note, to the effect that the maker expressly waives all rights and benefits conferred by the statute of limitations, is not void as against public policy, and that by it he binds himself not to plead the statute—if not for all time—for at least a reasonable time, *i. e.,* until the expiration of an additional period of eight years after the period prescribed by section 6445, Revised Codes.

Reformation of Instruments—Mistake—When Decreed.
4.   Where the parties to a contract agree upon the terms and conditions thereof and through mutual mistake the writing signed by them fails to express their agreement, or includes terms and conditions not agreed upon, a court of equity will reform it.

[As to mistake as ground for reformation of instruments, see note in 65 Am. St. Rep. 484.]

Same—Failure to Read Before Signing—Effect.
5.   Though, generally speaking, failure of a party to read an instrument before signing it, will preclude relief by way of reformation, it will be granted when neglect in this behalf is excusable, and when, in view of all the circumstances, denial of it would permit one party to inflict a gross wrong upon the other.

Same—Signing Without Reading—Mistake of Scrivener.
6.   Where the parties to the renewal of a promissory note intrusted the duty of formulating the writing to a scrivener, who mistakenly embodied in it a stipulation that the maker waived the benefit of the statute of limitations, the latter could have it reformed even though he signed and delivered it without reading it.

Same—Laches—What Does not Constitute.
7.   Mere delay is not sufficient ground for the imputation of laches.
Same.
8.   One, seeking the reformation of a writing on the ground of a
mutual mistake of the parties to it was not required to act until he
discovered that a mistake had been made; hence where defendant did
not become aware of a mistake in a renewal note, until he saw a copy
of it embodied in the complaint, could not be held chargeable with
laches.

Same—Prior Demand for Correction of Mistake—When Unnecessary.
9.   Demand by defendant upon plaintiff to correct the mistake in the
writing before asking for reformation thereof, *held* to have been an
unnecessary and idle ceremony under the circumstances of the case, the
performance of which the law does not require.

Same—Promissory Notes—Stipulation Waiving Statute of Limitations—
Consideration.
10.   *Held*, that the pre-existing indebtedness evidenced by the note
which the writing was intended to renew was a sufficient consideration
for the entire contract of renewal; and that therefore the contention
that the stipulation therein, whereby the maker waived the benefit of
the statute of limitations, was without consideration, had no merit.

*Appeal from District Court, Lewis and Clark County, First Judicial District; Lew. L. Callaway, one of the Judges of the Fifth District, presiding.*

ACTION by Henry M. Parchen against William A. Chessman. From a judgment for plaintiff, defendant appeals. Reversed, with directions.

*Mr. John B. Clayberg* and *Mr. R. Lee Word,* for Appellant, submitted a brief; *Mr. Word* argued the cause orally.

Any attempt to waive the statute of limitations is against public policy and unenforceable, especially when the attempted waiver is for an indefinite time and made a part of the note sued upon. (*Nunn* v. *Edmiston,* 9 Tex. Civ. App. 562, 29 S. W. 1115; *Wright* v. *Gardner,* 98 Ky. 454, 33 S. W. 622, 35 S. W. 1116; *Moxley* v. *Ragan,* 10 Bush (Ky.), 156, 19 Am. Rep. 61; *Shapley* v. *Abbott,* 42 N. Y. 443, 1 Am. Rep. 548; *Greene* v. *Coos Bay R. R. Co.,* 23 Fed. 67, 10 Saw. 625; *Union Central Life Ins. Co.* v. *Spinks,* 19 Ky. 261, 7 Ann. Cas. 913, 69 L. R. A. 264, 83 S. W. 615, 84 S. W. 1160; *Moore* v. *Taylor,* 2 Tenn. Ch. App. 556; *Trask* v. *Weeks,* 81 Me. 325, 17 Atl. 162; *Smith* v. *Gillette,* 59 Tex. 86; *Harper* v. *Leal,* 10 How. Pr. (N. Y.) 276.) Statutes of limitations are statutes of rest and repose and are enacted

and enforced upon the ground of public policy, for the purpose of requiring reasonably speedy litigation settling the rights of the parties at a time before the death or removal beyond the jurisdiction of the court of important witnesses. Such a clause as the one found in the note sued upon, if held valid, would waive the statute of limitations indefinitely, and the plaintiff, or his heirs, successors or assigns, might delay one hundred years or indefinitely before bringing suit, and sue after the defendant, and all his witnesses were dead. Thus the jurisdiction of the court would be delayed and practically defeated. Such an effect is so clearly against public policy as to render the clause objected to absolutely void and unenforceable.

The clause in question is a mere *nudum pactum* and absolutely without consideration. (*Shapley* v. *Abbott*, 42 N. Y. 443, 1 Am. Rep. 548; *Kellogg* v. *Dickinson*, 147 Mass. 432, 1 L. R. A. 346, 18 N. E. 223; *Andreae* v. *Redfield*, 98 U. S. 225, 25 L. Ed. 158; *Green* v. *Coos Bay Wagon Road Co.*, 23 Fed. 67, 10 Saw. 625.)

A waiver of the statute of limitations applies only to time then past. (*Green* v. *Coos Bay Wagon Road Co.*, 23 Fed. 67, 10 Saw. 625.) In this case Judge Deady says: "The bar of the statute cannot be waived or renounced in advance, as that would put it in the power of individuals to dispense with the law contrary to public policy and peace it was intended to promote and preserve." (See, also, Wood on Limitations, 3d ed., sec. 76; *Tolle's Appeal*, 54 Conn. 521, 9 Atl. 402.) A waiver of the statute in advance would practically deprive the courts of jurisdiction for an interminable time and such contract or promise would necessarily be void. (*Shapley* v. *Abbott*, 42 N. Y. 443, 1 Am. Rep. 548; *Trask* v. *Weeks*, 81 Me. 325, 17 Atl. 162.)

A renewal note must be in the same form as the note renewed. This follows from the ordinary understanding of the word "renewal." As stated by the supreme court of Indiana, the word "renewed" or "renewal" as applied to promissory notes in commercial and legal parlance means nothing more than the substitution of another obligation for the old one. It means

to re-establish a particular contract for another period of time, to restore to its former condition an obligation on which the time of payment has been extended. (*Kedey* v. *Petty,* 153 Ind. 179, 54 N. E. 798.)

The clause objected to, being a written contract, the statute of limitations has run against it and rendered it inoperative. (*Kellogg* v. *Dickinson,* 147 Mass. 432, 1 L. R. A. 346, 18 N. E. 223; *Cameron* v. *Cameron,* 95 Ala. 344, 10 South. 506; *Newell* v. *Clark,* 73 N. H. 289, 61 Atl. 555; *Trask* v. *Weeks,* 81 Me. 325, 17 Atl. 162.)

The failure of appellant to read the note when it was executed, under the circumstances set up in the answer, does not prevent him from showing that the objectionable clause was improperly inserted. (*Palmer* v. *Hartford Ins. Co.,* 54 Conn. 488, 9 Atl. 248; *Smelser* v. *Pugh,* 29 Ind. App. 614, 64 N. E. 943; *Story* v. *Gammell,* 68 Neb. 709, 94 N. W. 982; *Taylor* v. *Glens Falls Ins. Co.,* 44 Fla. 273, 32 South. 887; *Silbar* v. *Ryder,* 63 Wis. 106, 23 N. W. 106; *Green Bay etc. Canal Co.* v. *Hewitt,* 62 Wis. 316, 21 N. W. 216, 22 N. W. 588; *Linton* v. *Unexcelled Fireworks Co.,* 128 N. Y. 672, 28 N. E. 580; *Albany City Savings Inst.* v. *Burdick,* 87 N. Y. 40.)

*Messrs. Galen & Mettler,* for Respondent, submitted a brief; *Mr. Frank Mettler* argued the cause orally.

The statute limiting the time within which actions shall be brought has been said to be for the benefit and repose of individuals and not to secure general objects of policy or morals, and hence it may be laid down as a general rule that the protection of the statute may be waived by one entitled to rely upon it. (25 Cyc. 1012, note 43; *Evans* v. *Faircloth-Byrd Mercantile Co.,* 165 Ala. 176, 21 Ann. Cas. 1164, 51 South. 785; *Tebbets* v. *Fidelity etc. Co.,* 155 Cal. 137, 99 Pac. 501; *Grubbs* v. *Nixon,* 93 Ark. 79, 137 Am. St. Rep. 78, 123 S. W. 785; *Holmquist* v. *Gilbert,* 41 Colo. 113, 14 L. R. A. (n. s.) 479, 92 Pac. 232; *Scott* v. *Bay City,* 150 Mich. 694, 114 N. W. 675; *Brereton* v. *Benedict,* 41 Colo. 16, 92 Pac. 238; *Foot* v. *Burr,* 41 Colo. 192, 13 L. R. A.

(n. s.) 1210, 92 Pac. 236; *Mountain Water Works Cons. Co.* v. *Holme,* 49 Colo. 412, 113 Pac. 501; *Zeno* v. *Adoue,* 54 Tex. Civ. App. 36, 117 S. W. 1039; *State* v. *District Court,* 38 Mont. 415, 100 Pac. 207; *In re Colbert's Estate,* 44 Mont. 259, 119 Pac. 791.) A waiver of the effect of the bar of the statute may be accomplished by an express agreement to that effect, or by a new promise, or part payment. (25 Cyc. 1012, notes 45, 46.) The general rule is that statutes of limitation may be waived by agreement for a definite or limited time, or for an indefinite or unlimited time, and this whether the waiver is made contemporaneously with and as a part of the original transaction in controversy, or subsequently thereto. (25 Cyc. 1014, notes 54-57; *Wells Fargo & Co.* v. *Enright,* 127 Cal. 669, 49 L. R. A. 647, 60 Pac. 439; *State Loan & T. Co.* v. *Cochran,* 130 Cal. 245, 62 Pac. 466, 600; *Smith* v. *Lawrence,* 38 Cal. 24, 99 Am. Dec. 344.)

Defendant's affirmative defense attempting to allege mutual mistake is fatally defective, and therefore demurrable, in the following particulars:

1. It fails to allege that a demand to correct the alleged mistake was made upon plaintiff, and that plaintiff refused to correct it; and does not allege any good reason or excuse for failure to make such demand. (34 Cyc. 944, note 28.)

2. It affirmatively shows that defendant was guilty of laches in unreasonably delaying to bring his action to reform the note, and fails to show any good excuse for such delay. (34 Cyc. 966, 967; 16 Cyc. 236.)

3. It is not alleged or shown that the insertion of the clause in question has caused any damage or prejudice, or will cause any to defendant, or that it in any way affects the substance of the contract itself, or the cause of action of plaintiff arising out of same. (25 Cyc. 998, and cases cited in note 73.) Equity will not correct a written contract on the ground of mistake, unless it appears that the party against whom the correction is sought is designing to take advantage of the mistake. (*Brainerd* v. *Arnold,* 27 Conn. 617.) There is no necessity for reformation where the legal construction put on the instrument would

be the same as before reformation. (34 Cyc. 946, and cases cited in note 47.)

4. Defendant fails to allege or show any wrong on the part of plaintiff, or any failure of plaintiff to perform his full duty toward defendant, or any knowledge of the so-called mistake by plaintiff; and it appears on the face of the second defense that the defendant is asking the aid of a court of equity to assist him in correcting a so-called mistake thirteen years after it was made, so as to be able to plead the statute of limitations against the plaintiff's cause of action, without offering to do any equity whatsoever on his part. While it is true that equity will relieve against the consequences of a mistake of fact, where the mistake is mutual, yet where the opportunities for information have been on both sides equal, and there has been no concealment by one of facts which the other was entitled to know, and where both have acted in good faith, there can be no relief. (16 Cyc 68, 69, note 7.) Its jurisdiction is exercised only in further-ance of justice, and relief will not be given against an equal or a superior equity, or unless the parties can be placed *in statu quo*. (16 Cyc. 69, notes 8–10.)

5. It fails to allege or show that defendant was not guilty of negligence, by reason of which the alleged mistake occurred; on the contrary, it affirmatively shows that defendant was guilty of negligence in not reading said note before signing it, and does not allege or show any good reason or excuse for his not reading it. A party will not be given relief against a mistake induced by his own negligence, as where he has failed to avail himself of means of knowledge of the facts. (16 Cyc. 69, notes 11, 12.) The maker of a note, who could read, but is so negligent as not to inform himself of the contents thereof, cannot defend same in the hands of a *bona fide* holder. (*Cedar Rapids Nat. Bank* v. *Rhodes,* 96 Miss. 700, 51 South. 717.) That one party has failed to notice a stipulation contained in an instrument, which was not induced by fraud or misrepresentation on behalf of the other contracting party, is no ground for relief. (34 Cyc. 918, note 88.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

On December 26, 1897, the defendant executed and delivered to the plaintiff the following promissory note:

"$9,663.50.            Helena, Montana, December 26, 1897.

"One year after date I promise to pay to Henry M. Parchen, or order, the sum of nine thousand six hundred and sixty-three and 50/100 dollars, for value received, together with interest thereon at the rate of ten per cent per annum from date until paid; and further agree that in the event of a suit to enforce the collection of this note a reasonable counsel fee, to be fixed and determined by the court, shall be added to and form a part of the judgment as damages. All rights and benefits conferred by the statute of limitations are expressly waived; it being expressly agreed that suit may be maintained to enforce collection hereof at any time after maturity, the provisions of the statute of limitations notwithstanding.

"WM. A. CHESSMAN."

On November 26, 1902, a payment of $5,000 was made thereon, leaving a balance of $9,414.70. On March 11, 1911, plaintiff brought this action to recover this balance, with interest. The defendant answered, alleging several special defenses, *viz.:* (1) That plaintiff's cause of action is barred by the limitation of eight years prescribed by section 6445 of the Revised Codes. (2) That on December 26, 1893, the defendant, having become liable to the plaintiff in the sum of $12,821.28, executed and delivered to the plaintiff his promissory note therefor due one year after date, to bear interest at the rate of ten per cent per annum; that renewals of this note were thereafter made from time to time until December 26, 1897; that on that date he executed the note in suit for the balance then remaining due; payments having in the meantime been made; that this note was intended, as a renewal *pro tanto* of the prior note; that it was intended by both plaintiff and defendant that it should be in the same form and of the same tenor as the original and prior renewal notes; that it was prepared by a scrivener who, by mis-

take, made use of a printed form containing the clause reciting the-agreement that defendant expressly waives ''all rights and benefits conferred by the statute of limitations,'' *etc.;* that none of the prior renewal notes contained this clause; that it was not the understanding or agreement or intention of the plaintiff and defendant that the clause referred to should be included in the note, but that, on the contrary, it was the understanding and agreement that the note should be of the same form, tenor and effect as all the former renewal notes, and should contain no other, further, or different obligations or promises; that defendant, believing that the note had been drawn in conformity with the understanding between himself and the plaintiff, and fully relying on the existence of such fact at the time of signing the note, signed the same when presented by the scrivener, without reading it; that, if he had been advised that the note contained the clause referred to, he would not have signed it; that immediately after it was signed it was delivered to the plaintiff, and has never since been in the possession of the defendant nor seen by him; that the defendant had no knowledge that the clause had been inserted therein until the plaintiff's complaint was served on him in this cause; that the preparation of the note was the personal act of the scrivener who, by his own mistake, included the said clause therein, without the knowledge or consent of either the plaintiff or the defendant, and contrary to their understanding and agreement, and that no demand was ever made by plaintiff upon the defendant that the said note should contain any agreement touching the statute of limitations. The prayer demanded that the note be reformed by striking therefrom the clause in question, and that plaintiff's cause of action be declared barred by the statute *supra.* (3) After a recital of substantially all the foregoing facts, it is further alleged that neither prior to the time of the execution of the note nor at that time, nor thereafter, did any consideration pass from the plaintiff to the defendant, nor was any received by the defendant, or by any person in his behalf, on account of which he agreed to incorporate in said note the clause referred to; that the minds of plaintiff and defendant never met so as to

constitute said clause a contract between them; and that said clause was and is without consideration, and of no binding force and effect. Demand was made that the clause be held void, and that plaintiff's cause of action be declared barred by the statute. (4) It is further alleged that the clause in question is itself barred by the statute. To these several defenses, the plaintiff interposed general demurrers, which were sustained, and, defendant declining to plead further, the court rendered judgment for the plaintiff for the full amount of the balance due, together with costs, including an attorney's fee. Defendant has appealed.

1. The first contention made by counsel presents the question —a new one in this state—whether such an agreement as that embodied in the note in suit is void because against public policy. If this contention can be maintained, of course the agreement was not effective for any purpose, and, though the note was renewed by the payment made on November 26, 1902 (Rev. Codes, sec. 6472), the statute began to run again from that date, and the right to recover was fully barred when this action was commenced.

Can it be said that the agreement contravenes the public policy of this state? What is the public policy of a state, and what [1] is contrary to it, are questions to be determined, not by the private convictions or notions of the persons who happen for the time to be exercising judicial functions, but by reference to the enactments of the law-making power, and, in the absence of them, to the decisions of the courts. And when the legislature, exercising its constitutional powers, has spoken upon a particular subject, its utterance is the public policy of the state on that subject. (*MacGinniss* v. *Boston & Mont. etc. Co.*, 29 Mont. 428, 75 Pac. 89; *Vidal* v. *Philadelphia*, 2 How. (U. S.) 127, 11 L. Ed. 205; *United States* v. *Trans-Missouri Freight Assn.*, 166 U. S. 290, 41 L. Ed. 1007, 17 Sup. Ct. Rep. 540.) As to what is the policy of the law on the subject of the statute of limitations in this state in our opinion is clearly determined by [2] legislative utterance. Section 6475 of the Revised Codes declares: "The objection that the action was not commenced

within the time limited can be taken only by answer. The corresponding objection to a defense or counterclaim can be taken only by reply except where a reply is not required, in order to enable the plaintiff to raise an issue of fact, upon an allegation contained in the answer.'' If this provision is to be assigned the meaning which its language clearly imports, the legislature has left it entirely optional with the party against whom a cause of action is alleged to avail himself of the protection of the statute or to forbear it; in other words, it has provided solely for the benefit of one who occupied the position of a defendant, as well as that of the plaintiff when the necessity arises for him to make defense to a counterclaim interposed by the defendant—a defense which he may invoke if he chooses. If he omits to invoke it at the proper time and in the proper way, it does not avail him under any circumstances, even though it appears incidentally that the cause of action alleged against him is completely barred. (*Grogan* v. *Valley Trading Co.*, 30 Mont. 229, 76 Pac. 211; *American Min. Co.* v. *Basin & Bay State Min. Co.*, 39 Mont. 476, 24 L. R. A. (n. s.) 305, 104 Pac. 525; *Cullen* v. *Western etc. Title Co.*, 47 Mont. 513, 134 Pac. 302.) It is of no concern to the court or to the public that this is so, whether the omission is the result of oversight or of a prior agreement with the adversary party.

If this is the correct theory—and we are satisfied that it is— section 6181 of the Revised Codes is express authority for the [3]  proposition that a party may waive the benefit of the statute before or after the expiration of the prescribed limit, not only by either of the acts mentioned in section 6472, *supra*, but also by express agreement based upon a consideration, though made contemporaneously with, and as a part of, the principal agreement or obligation out of which the action has arisen. This section provides: ''Anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement.'' This provision does not prescribe the time when nor the mode by which the waiver may be made effective, nor does it impose any restriction or limitation upon the right of waiver. It must

therefore be assumed that the party desiring to waive his right is free to do so in any way and at any time he chooses.

When we come to examine the decisions in other jurisdictions, we find them at variance with regard to the policy of the law upon the subject of waiver by contract. In Kentucky it is held that such a contract is against public policy and void. (*Moxley* v. *Ragan,* 10 Bush (Ky.), 156, 19 Am. Rep. 61; *Wright* v. *Gardner,* 98 Ky. 454, 33 S. W. 622, 35 S. W. 1116; *Union Cent. Life Ins. Co.* v. *Spinks,* 119 Ky. 261, 7 Ann. Cas. 913, 69 L. R. A. 264, 83 S. W. 615, 84 S. W. 1160.) In a later decision by the same court, however, an agreement in a contract of fire insurance limiting the time within which an action may be brought thereon to a period less than that provided by the statute is held valid. (*Smith* v. *Herd,* 110 Ky. 56, 60 S. W. 841, 1121.) The rule announced in the first three cases cited is approved generally by the courts of Mississippi, Tennessee, Maine, Texas and New York. (*Crane* v. *French,* 38 Miss. 503; *Mills* v. *Bennett,* 94 Tenn. 651, 45 Am. St. Rep. 763, 30 S. W. 748; *Moore* v. *Taylor,* 2 Tenn. Ch. App. 556; *Trask* v. *Weeks,* 81 Me. 325, 17 Atl. 162; *Smith* v. *Gillette,* 59 Tex. 86; *Shapley* v. *Abbott,* 42 N. Y. 443, 1 Am. Rep. 548; *Mutual Life Ins. Co.* v. *United States etc. Co.,* 82 Misc. Rep. 632, 144 N. Y. Supp. 476.)

While expressing a doubt that an agreement made as a part of the original contract, or a subsequent agreement to waive the statute for all time, is valid, the supreme court of California has decided that an agreement for an extension for a definite or reasonable time is valid. (*Wells Fargo & Co.* v. *Enright,* 127 Cal. 669, 49 L. R. A. 647, 60 Pac. 439; *State Loan etc. Co.* v. *Cochran,* 130 Cal. 245, 62 Pac. 466, 600.) The same conclusion is announced by the courts of Missouri, Vermont, New Jersey and South Carolina. (*Bridges* v. *Stephens,* 132 Mo. 524, 34 S. W. 555; *Lyndon Savings Bank* v. *International Co.,* 78 Vt. 169, 112 Am. St. Rep. 900, 62 Atl. 50; *Quick* v. *Corlies,* 39 N. J. L. 11; *Lowry* v. *Dubose,* 2 Bail. (S. C.) 425.)

The supreme court of the United States (*Riddlesbarger* v. *Hartford Ins. Co.,* 7 Wall. (U. S.) 386, 19 L. Ed. 257) has declared that a stipulation in a policy of fire insurance limiting

the time within which suit may be brought to a period shorter than that prescribed by the statute is not invalid as against public policy, and will be enforced as any other agreement. If such an agreement does not contravene public policy, it is difficult to understand how an agreement by which the prescribed period is extended, or by which the benefit of the statute is waived for a definite time, or for all time, is not valid. The one as effectually sets aside the statute as does the other, and, if the one is valid, no reason can be suggested why the other is not also. Recognizing this as the logical conclusion from the premise that a waiver of the protection of the statute by agreement is not against public policy, the courts of Vermont and New Jersey both hold that the agreement may be made a part of the original contract, or during the statutory period, and that when once made it is continuous, unless by its terms it is limited to a specified time. (*State Trust Co.* v. *Sheldon,* 68 Vt. 259, 35 Atl. 177; *Lyndon Savings Bank* v. *International Co., supra; Quick* v. *Corlies, supra.*) In these cases the agreement of waiver was upheld on the ground that defendant, having received the benefit of it, was estopped to repudiate it. It seems to us that, if such an agreement is enforceable at all, it is upon the broad principle that it has been so agreed by the ·parties. Be this as it may, the result reached by these cases is the logical one, once the premise is admitted that such agreements do not contravene public policy.

We are not required in this case to determine definitely whether by the agreement in controversy herein the defendant bound himself to refrain from pleading the statute for all time, or whether he bound himself for a reasonable time only, *viz.:* Until the expiration of an additional period of eight years after the expiration of that prescribed by the statute. Nothing appearing to overcome the presumption that a sufficient consideration passed to the defendant at the time the agreement was made (Rev. Codes, sec. 5010), the action commenced within three and one-half months of the expiration of the statutory limit was, upon either theory, commenced in time. Plaintiff's demurrer to this defense was properly sustained. For the same reason

the demurrer to the fourth defense was properly sustained, for, if the defendant became bound by the agreement at all, he waived his right to rely upon the statute for the full period of eight years from the date at which the cause of action would otherwise have been fully barred, *viz.:* Eight years after November 26, 1910.

2. The second defense alleged is not a model pleading; but we think it states a *prima facie* case of mutual mistake, and hence [4] is sufficient to require a reply by plaintiff. It is true that the defendant was guilty of negligence in failing to read the note before he signed it. (Rev. Codes, sec. 4983.) But if the facts alleged are accepted as true, the plaintiff was not himself free from negligence. The purpose of the parties, as shown by the allegations of the answer, was to renew a note which had been renewed from year to year since December 26, 1893, by substituting therefor one of the same form and tenor. None of the renewal notes had contained the objectionable clause. It was, moreover, the understanding of the parties that the new note should be changed only so far as to effect a change in the date of payment to a year later. If this was the fact—and for present purposes we must assume that it was—the mistake was mutual, and the new note as drawn by the scrivener did not represent the contract as actually made. If the parties to a contract agree upon terms and conditions named by them, and through mistake the writing embodying the agreement signed by them, or either of them, fails to express the agreement as made, or includes therein terms and conditions not agreed upon, the result is that there is no contract between them. Under such circumstances a court of equity will reform the written evidence of the contract so as to make it express the terms of the agreement as actually fixed by the parties. The rule thus stated was recognized by this court in *Fitschen* v. *Thomas,* 9 Mont. 52, 22 Pac. 450, and applied in *American Min. Co., Ltd.,* v. *Basin & Bay State Min. Co., supra.* The facts alleged bring the case within the principle of the latter case. If nothing else [5] appears, the fact that the party seeking reformation of the contract failed to read it before signing it will preclude relief;

but negligence in this behalf may be excusable under some circumstances. Otherwise no case could arise in which relief could be granted if the party asking it should appear to be open to the imputation of negligence in any degree.

The term "mistake" involves the conception that he to whom the fault expressed by it is imputed has been guilty of some degree of negligence which may or may not be excusable when viewed in the light of the circumstances of the particular case. Courts of equity are not bound by cast-iron rules. The rules by which they are governed are flexible and adapt themselves to the exigencies of the particular case. Relief will be granted when, in view of all the circumstances, to deny it would permit one party to suffer a gross wrong at the hands of the other. So [6] it is held generally that where the parties intrust the duty of formulating a writing embodying their agreement to an attorney or scrivener, and he, by his own mistake or fraud, embodies in it stipulations and conditions other than those agreed upon, the party against whom it is sought to be enforced may have it reformed, though it was signed by him and delivered to the other party, without reading. (*Moore* v. *Copp*, 119 Cal. 429, 51 Pac. 630; *Kilmer* v. *Smith*, 77 N. Y. 226, 33 Am. Rep. 613; *Albany City Savings Inst.* v. *Burdick*, 87 N. Y. 40; *Palmer* v. *Hartford Ins. Co.*, 54 Conn. 488, 9 Atl. 248; *Smelser* v. *Pugh*, 29 Ind. App. 614, 64 N. E. 943; *Story* v. *Gammell*, 68 Neb. 709, 94 N. W. 982; *Taylor* v. *Glens Falls Ins. Co.*, 44 Fla. 273, 32 South. 887; *Silbar* v. *Ryder*, 63 Wis. 106, 23 N. W. 106; *Greene Bay etc. Canal Co.* v. *Hewitt*, 62 Wis. 316, 21 N. W. 216, 22 N. W. 588.)

The case of *Hennessy* v. *Holmes*, 46 Mont. 89, 125 Pac. 132, has been understood to declare the rule that a failure by one of the parties to read a contract before signing it, when he has had full opportunity to acquaint himself with its contents, and there has been no fraud or misrepresentation by the other party, is such negligence as will preclude relief, without regard to the attendant circumstances. So understood, the decision unduly restricts the scope of the rule, though it is fully sustained by the authorities cited. In so far as it conflicts with the views herein

expressed, it is to be deemed overruled. As stated before, the term "mistake" carries with it the idea of fault in him to whom the mistake is imputed. The allegation of mutual mistake imputes negligence to both parties, and this mutuality is the basis of the rule of relief on the ground of mistake. To apply the rule in all its rigidity as it is understood to be declared by the *Holmes Case* would preclude relief in any case, even though the mistake is mutual, and the circumstances are such as to excuse the negligence of the complaining party.

Nor do we think that under the circumstances the defendant [7, 8] is open to the imputation of laches because he did not seek to have the note reformed earlier. It appears that, after it was delivered to the plaintiff, defendant did not see it, or know that it included the agreement in question, until the present action was brought. If this is true, he had, up to that time, been justified in resting upon the assumption that the note had been drawn in accordance with the understanding and agreement had at the time it was executed. Since it had been in the possession of the plaintiff, and had not been seen by the defendant, the latter could have had no knowledge that the mistake had been made until he ascertained the fact from the copy of the complaint served upon him. *Prima facie* this was sufficient to excuse his delay, for he was not required to act until he discovered that a mistake had been made. In any event mere delay is not sufficient ground for the imputation of laches. (*Wright* v. *Brooks,* 47 Mont. 99, 130 Pac. 968.)

Nor is the defendant to be denied relief because he does not [9] allege a previous demand upon plaintiff to correct the mistake. If he had no knowledge of the mistake, how could he make a demand for its correction? By commencing the action, the plaintiff manifested his intention to enforce the contract as written. A demand by defendant before filing his answer would have been an idle ceremony. "The law neither does nor requires idle acts." (Rev. Codes, sec. 6200.) The demurrer to this defense should have been overruled.

3. It is contended by counsel for defendant that the court was in error in sustaining the demurrer to the third defense, be-

cause, upon the facts stated, the agreement in question was [10] without consideration. The argument proceeds upon the assumption that the agreement was wholly independent of the note, and must have been made upon a consideration other than that of the note itself. Counsel cite some cases which consider such independent agreements, as, for instance, a verbal promise not to plead the statute, or an indorsement upon the note itself pending the running of the statute. Such an agreement, of course, is not enforceable if not supported by an independent consideration. (*Kellogg* v. *Dickinson,* 147 Mass. 432, 1 L. R. A. 346, 18 N. E. 223; *Shapley* v. *Abbott, supra; Green* v. *Coos Bay Wagon Road Co.* (C. C.), 23 Fed. 67, 10 Saw. 625.) On this point it is sufficient to say that, if the agreement was the result of a mutual mistake of the parties, it ought to be eliminated from the contract. If it was not incorporated therein by mistake, then the pre-existing indebtedness was a sufficient consideration for the entire contract. We know of no rule by which a party may select out of a contract one stipulation and avoid it by showing that it is not founded upon a consideration, while admitting that the contract is otherwise unobjectionable. The demurrer to this defense was properly sustained.

The judgment is reversed, with directions to the district court to overrule the demurrer to the second defense.

*Reversed, with directions.*

MR. JUSTICE SANNER concurs.

MR. JUSTICE HOLLOWAY concurring specially:

I concur fully in the result reached. In my judgment, however, there should be omitted from the opinion the sentence: "If nothing else appears, the fact that the party seeking reformation of the contract failed to read it before signing it, will preclude relief." It is apt to mislead. To illustrate my meaning: If in the instant case the waiver clause was inserted in this note by mutual mistake, then the note sued upon does not represent the agreement of the parties and is not, in contemplation of law, a contract at all, because it lacks the indispensable ingredi-

ent—a meeting of the minds.    If the note sued upon is not valid for want of that element, no negligence of defendant Chessman, however gross, can supply it or entitled plaintiff to recover for the breach of an agreement which never existed.

Rehearing denied July 16, 1914.