L. M. BEARD AND MARY BEARD, PLAINTIFFS AND APPEL-
LANTS, *v.* TRIXIE McCORMICK AND MONTANA LIQUOR
BOARD, DEFENDANTS AND RESPONDENTS.

No. 11007.
Submitted January 12, 1966. Decided February 17, 1966.
Rehearing denied March 24, 1966.
411 P.2d 964.

Garlington, Lohn & Robinson, Missoula, J. C. Garlington
(argued), Missoula, for appellant.

Wooten & Kidder, Missoula, Wellington D. Rankin (argued), Helena, Arthur P. Acher (argued), Helena, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

Plaintiffs-appellants, L. M. Beard and his wife, Mary Beard, bring this appeal from an adverse declaratory judgment entered in the District Court of Powell County.

The plaintiffs owned a one story building in Ovando, Montana, in which L. M. Beard operated a tavern for more than 30 years. On January 18, 1960, due to Mrs. Beard's illness, L. M. Beard leased the premises to the defendant-respondent, Trixie McCormick, for a period of five years at $50 per month to expire January 18, 1965. The lease, homemade, was typed by Mrs. Beard after agreement was apparently reached between L. M. Beard and Trixie McCormick's father, now deceased, who performed all the negotiations with the Beards on her behalf. The lease was signed by both plaintiffs and the defendant.

The lease states in part that the building so leased not be appropriated to any other use than as a tavern. As if by afterthought, an additional clause was typed at the end of the lease which stated:

"It is understood and agreed between the parties concerned that the liquor license shall not be moved from the premises."

The defendant went into possession on January 18, 1960, the day she signed the lease. An assignment of the plaintiffs' retail beer and liquor licenses was later executed between the parties bearing the date of February 1, 1960. This document was executed in the offices of the Montana Liquor Control Board in Helena. The licenses were current and would not expire until June 30, 1960.

The defendant thereafter operated the tavern and dwelled therein. She paid to the plaintiffs the agreed rent of $50 per month, plus an occasional $5 for rent of garage space when re-

quired. She has further obtained all the necessary yearly license renewals at her own expense since she took possession of the building.

The lease contained no provision for its renewal, nor did it mention the liquor license save for the covenant that it would not be moved from the premises. The defendant did not negotiate with the plaintiffs for renewal of the lease, and instead, applied to the Board for permission to transfer the licenses at the end of the lease agreement to a location on a nearby highway. At the time this case was before the trial court, construction of the proposed new building had not yet begun.

At the Board's hearing on transfer of the license, Beard appeared and registered a protest, but the Board approved the transfer subject to the completion of the new building.

Plaintiffs, in instituting this action alleged they would suffer irreparable damage and loss because no other retail liquor or beer licenses were then available due to Montana's quota-law restrictions. The plaintiffs' property and business would thereby become vacant and worthless. The complaint prayed that the rights of the parties under the lease, and with respect to the licenses, be adjudicated and declared.

The district court found that since no exceptions were noted regarding the license in the lease, the provision relating to the license not being moved from the premises would expire with the expiration of the lease; that since no exceptions were noted in the assignment of the licenses it was an outright transfer of all rights of L. M. Beard to the defendant; that by reason of such findings the defendant owned the retail licenses and had the right to move them to any location she desired and was under no obligation to operate or use the licenses in the leased premises; that since the lease had expired she was under no obligation to re-lease the premises or attach the licenses thereto; thereby denying plaintiffs any relief. The Montana Liquor Control Board disclaimed any interest in the matter of

the licenses as between the plaintiffs and the defendant and the action was dismissed with respect to the Board.

The trial court's decision reaches a result, it seems, which in effect transforms the lease agreement for the building into a contract for sale of the licenses. It is impossible from either the instruments or the record before this court to determine whether such a result was or was not intended, and, in addition, whether mistake, mutual or otherwise, existed at the time the lease agreement was made. The defendant's own testimony clearly shows she did not negotiate the lease with the plaintiffs. Her father, Jody Stokes, did the talking, most of which, apparently, was without her immediate presence. Jody Stokes is dead.

There can be no question that the lease of the premises and the assignment of the licenses were both part of the same transaction between the parties, even though both were not executed at the same time. Our codes require that those dispensing liquor be licensed (R.C.M.1947, § 4-401), and that such licensing be only after approval of the Montana Liquor Control Board. R.C.M.1947, § 4-410, states in part:

"No transfer of any license as to person or location shall be effective unless and until approved by the board * * *."

The defendant could not, within the law, operate the plaintiffs' tavern under the existing lease until approval of the Board was given. Assignment of the plaintiffs' licenses to the defendant was an essential step toward such approval, the same being necessary if the Board was to effectively preserve its powers and authority over the tavern operator and exercise its statutory duties as prescribed by our codes. The lease would have been totally useless without such assignment since the building could be used only as a tavern. As between the parties therefore, the instruments stand together and are inseparable.

But one case is found in Montana similar to the one at bar. In Sullivan v. Marsh, 124 Mont. 415, 225 P.2d 868, the plaintiff

Sullivan leased his hotel and bar to the defendant for five years at $3,000 per year. The lease period was from 1944 to 1949. The defendant and one Tappa executed the agreement May 27, 1944, and took possession of the premises July 1, 1944, the day after the plaintiff's liquor licenses expired. For the next five years, the defendant paid for and was issued in his name the necessary liquor licenses to operate the tavern. The lease contained no provision for its renewal and renewal was refused by the plaintiff a few weeks prior to its expiration. The defendant turned back to the plaintiff the properties and fixtures covered by the lease but refused to return the liquor license and applied to the Board for a transfer to a different location. This court eventually held that the defendant had a right to the license. The important differences in that case from this one are that (1) no assignment was necessary from Sullivan to Marsh. Sullivan let his license expire and Marsh applied for one in his own name, and, (2) liquor licenses were not limited in 1944 by our quota law. They were easily obtained and held little greater value than the renewal expenses. We feel, therefore, that the Sullivan case is not applicable to the one at bar. At the time the lease in the Sullivan case was executed, retail beer and liquor licenses were not the treasure they appear to be today, because of the quota system now in effect.

"* * * Courts of equity are not bound by cast-iron rules. The rules by which they are governed are flexible and adapt themselves to the exigencies of the particular case. Relief will be granted when, in view of all the circumstances, to deny it would permit one party to suffer a gross wrong at the hands of the other." Parchen v. Chessman, 49 Mont. 326, 339, 142 P. 631, 635.

We feel the trial court erred in not binding the lease and the assignment together and causing one to be dependent upon the other. In her testimony, the defendant said she paid only the rent required—$50—under the lease. She admitted she paid no

additional sums in connection with the tavern business to the plaintiff. No money was paid directly for the transfer of the unexpired licenses and no profits were shared. About a year and one-half before the lease expired, defendant admitted she told the plaintiff she thought the licenses were then worth $10,000 or more.

It is inconceivable that the plaintiff intended to relinquish his valuable license privileges for as little as $3,000 collected in the form of rent over a five-year period by $50 monthly installment payments.

When the defendant's lease expired on January 18, 1965, her rights to the use of the retail beer and liquor licenses as against the plaintiff, in equity, also expired, the lease and the assignment of the licenses being inseparably joined together.

The judgment appealed from is reversed and the cause remanded to the district court with directions to enter judgment in favor of the plaintiffs, adjudicating and declaring that they are the owners of the licenses, and containing appropriate provisions requiring transfer thereof by the defendant to the plaintiffs.

The records of the Montana Liquor Control Board indicated that defendant had full right to the license privileges and plaintiff's only recourse was to a court of equity. They have been granted relief, but we are not disposed to allow costs on this appeal and it is therefore ordered that each party shall bear their own costs on this appeal.

MR. JUSTICES JOHN CONWAY HARRISON and MR. JUSTICES DOYLE, ADAIR and CASTLES concur.