No. 13540

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

WILBERT F. GARTNER,

Plaintiff and Appellant,

-vs-

THOMAS C. MARTIN,

Defendant and Respondent.

---

Appeal from: District Court of the Tenth Judicial District,
Honorable LeRoy L. McKinnon, Judge presiding.

Counsel of Record:

For Appellant:

B. Miles Larson argued, Stanford, Montana

For Respondent:

Theodore P. Cowan argued, Lewistown, Montana

---

Submitted: March 9, 1977

Decided: JUN 22 1977

JUN 22 1977

Filed:

_Thomas J. Kearney_
Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

Plaintiff Wilbert F. Gartner brings this appeal from an adverse ruling of the district court, Judith Basin County, granting summary judgment to defendant Thomas C. Martin and denying summary judgment to plaintiff after cross-motions for summary judgment were submitted by both parties and a hearing held.

Plaintiff Gartner brought an action in district court to quiet title to Montana Retail Beer and Liquor License No. 36-452-3630-01, City Club Bar, Hobson, Montana.

Defendant Martin answered admitting Gartner was the owner and in possession of said beer and liquor license and admitted claiming an interest in the license.

Martin also filed a counterclaim, again admitting Gartner to be the title holder of the license, alleging that in 1956 Martin owned the license in question. At that time he assigned the license to Dewey Meyer, who in turn signed a chattel mortgage in the sum of $16,000 against the license to protect Martin's interest therein and the chattel mortgage was filed for record with the State Department of Revenue, Montana Liquor Control Board on July 18, 1956; that Martin is and has been the owner of Lots 1 and 2, Block 13, Original Townsite of Hobson, Judith Basin County, Montana, upon which is located the City Club Bar where the disputed license was used.

Thereafter several different persons were assigned the license and in each case Martin was acknowledged in writing by each assignee as mortgagee on the license. Gartner is the last person to date who was assigned the license. Gartner con-

sented in writing that Martin be placed on the license as a mortgagee on March 26, 1971.

Martin further alleged a general lease agreement between himself and Gartner for one year after May 1, 1974, and a breach of that lease. In reply, Gartner states the general lease agreement expired by its terms on May 1, 1975.

Both parties moved for summary judgment and after a hearing and testimony by Martin, the court, after consideration of the cross-motions for summary judgment, found that Montana Retail Beer and Liquor License No. 36-452-3630-01 was subject to the chattel mortgage held by Martin; that plaintiff knowingly received said license subject to the mortgage; that defendant has never been paid a reasonable purchase price for said license; and, that Gartner violated the terms of the mortgage in claiming ownership of the license. The district court found as a conclusion of law, that Martin is the rightful owner of Montana Retail Beer and Liquor License No. 36-452-3630-01.

These issues are presented for this Court's review:

(1) Did the district court err in entering its judgment determining that Montana Retail Beer and Liquor License No. 36-452-3630-01 was subject to the chattle mortgage held by Martin?

(2) Did the court err in finding that Gartner never paid a reasonable price for the retail beer and liquor license and Martin is the rightful owner of Montana Retail Beer and Liquor License No. 36-452-3630-01?

Testimony shows there was no note evidencing the $16,000 stated in the chattel mortgage and Martin himself drafted the mortgage on the advice of Howard King, the liquor inspector at that time.

- 3 -

Much discussion could be had, however this case is controlled by Beard v. McCormick, 147 Mont. 361, 364, 411 P.2d 964, where the Court stated:

"There can be no question that the lease of the premises and the assignment of the licenses were both part of the same transaction between the parties.* * *. Our Codes require that those dispensing liquor be licensed (R.C.M. 1947, §4-401) and that such licensing be only after approval of the Liquor Control Board. R.C.M. 1947, §4-410, states in part:

"'No transfer of any license as to person or location shall be effective unless and until approved by the board * * *.'

"The defendant could not, within the law, operate the plaintiffs' tavern under the existing lease until approval of the Board was given. Assignment of the plaintiffs' licenses to the defendant was an essential step toward such approval, the same being necessary if the Board was to effectively preserve its powers and authority over the tavern operator and exercise its statutory duties as prescribed by our codes. The lease would have been totally useless without such assignment since the building could be used only as a tavern. As between the parties therefore, the instruments stand together and are inseparable.

"But one case is found in Montana similar to the one at bar. In Sullivan v. Marsh, 124 Mont. 415, 225 P.2d 868, the plaintiff Sullivan leased his hotel and bar to the defendant for five years at $3,000 per year. The lease period was from 1944 to 1949. The defendant and one Tappa executed the agreement May 27, 1944, and took possession of the premises July 1, 1944, the day after the plaintiff's liquor licenses expired. For the next five years, the defendant paid for and was issued in his name the necessary liquor licenses to operate the tavern. The lease contained no provision for its renewal and renewal was refused by the plaintiff a few weeks prior to its expiration. The defendant turned back to the plaintiff the properties and fixtures covered by the lease but refused to return the liquor license and applied to the Board for a transfer to a different location. This court eventually held that the defendant had a right to the license. The important differences in that case from this one are that (1) no assignment was necessary from Sullivan to Marsh. Sullivan let his license expire and Marsh applied for one in his own name, and, (2) liquor licenses were not limited in 1944 by our quota law. They were easily obtained and held little greater value than the renewal expenses. We feel, therefore, that the Sullivan case is not applicable to the one at bar. At the time the lease in the Sullivan case was executed, retail beer and liquor licenses were not the treasure they appear to be today, because of the quota system now in effect.

- 4 -

"'* * * Courts of equity are not bound by cast-iron rules. The rules by which they are governed are flexible and adapt themselves to the exigencies of the particular case. Relief will be granted when, in view of all the circumstances, to deny it would permit one party to suffer a gross wrong at the hands of the other.' Parchen v. Chessman, 49 Mont. 326, 339, 142 P. 631, 635.

"We feel the trial court erred in not binding the lease and the assignment together and causing one to be dependent upon the other. In her testimony, the defendant said she paid only the rent required - $50 - under the lease. She admitted she paid no additional sums in connection with the tavern business to the plaintiff. No money was paid directly for the transfer of the unexpired licenses and no profits were shared. About a year and one-half before the lease expired, defendant admitted she told the plaintiff she thought the licenses were then worth $10,000 or more.

"It is inconceivable that the plaintiff intended to relinquish his valuable license privileges for as little as $3,000 collected in the form of rent over a five-year period by $50 monthly installment payments."

The instant case presents sufficiently similar facts.

Therefore, the findings of fact and conclusion of law of the trial judge are affirmed, in that Martin is the rightful owner of Montana Retail Beer and Liquor License No. 36-452-3630-01.

_____
Chief Justice

We Concur:

_____

_____

_____

_____
Justices.

- 5 -